## THOMAS J. NOYES *et a.* appellants, *versus* ROBERT BARBER.

At the common law, when a will had been proved only in common form without notice to those interested, the probate might be reexamined at any time within thirty years next after the probate.

Where the heirs at law were under the age of thirteen years, when a will was proved, and the executor named in the will, made residuary legatee and testamentary guardian of the heirs, it was held that a probate of the will made before any other guardian of the heirs was appointed, could not have the effect of a probate in solemn form.

The statute of June 22, 1814, relating to the probate of wills in solemn form, did not abrogate the common law on that subject, but was merely a statute of limitations, and that statute still remains in force with respect to all wills proved before the 1st of January, 1823.

THIS was an appeal from a decree of the judge of probate, in this county, approving and allowing a certain instrument, as the last will of Joseph Noyes, deceased. The said instrument purported to be executed on the 22d December, 1818, and to be a disposition of the testator's whole estate as follows.

" First, I give, &c. unto my two sons, Jefferson Noyes, and Joseph Noyes, Jr. two thirds of all my lands and tenements in Salisbury, in said county, to be equally divided between them when they are twenty-one years of age, if they conduct thomselves well ; otherways, only four dollars apiece ; and if either of them conduct well, and the other not, then the one that conducts well shall have his share of the land, and the other be debarred from his.

" Secondly, I give, &c. unto my daughter, Lucy Noyes, one third of all my real estate in Salisbury, &c. to be delivered her when eighteen years of age, if she conduct well, otherways, my executor is to give her four dollars, when she is eighteen years of age.

" Thirdly, I do hereby direct my executor, &c. to take the charge of my two sons and daughter abovementioned, until they become of age to act for themselves, and to educate and bring them up in the manner he may think most proper.

" Fourthly, I do hereby direct my executor hereinafter named, to take ten thousand dollars out of my personal property and bank stock, and appropriate it for the support of a public school, said school to be under the direction of six directors, who shall at first be appointed by my executor, and after that they shall fill their own vacancies. The house for said school to be built on the farm on which I now live, which farm I also give and bequeath for the support of said school. And further, I direct my executor to appropriate all my real estate in Salisbury, toward the support of said school, if my abovementioned children conduct themselves in such manner as to forfeit their title to the same ; said school to be denominated Noyes' School.

" Fifthly, I give, bequeath, and devise unto my executor hereinafter named, all my other property, both real and personal, my bank stock, goods and chattels of every description, to hold to him his heirs and assigns forever.

" Sixthly, and lastly, I hereby nominate, constitute, and appoint, Robert Barber, Esq. of said Andover, to be my executor of this my last will and testament."

The testator died on the 23d of December, 1818, leaving his three children mentioned in the said instrument his heirs at law, the oldest of whom was, at the time of his decease, under the age of thirteen years. On the 28th December, 1818, the said instrument was presented to the judge of probate in this county, and proved and allowed in common form ; no guardians of said heirs having been previously appointed, nor any notice given to them in any way that said instrument was to be offered for probate.

Soon after the oldest of the said heirs arrived at the age of twenty one years, in 1827, he presented a petition to the judge of probate in this county, praying a hearing for the probate of the said instrument in solemn form ; and upon a new hearing in solemn form on that petition the judge of probate again decreed that the said instru-

ment should be allowed as the last will and testament of the said Joseph Noyes ; from which decree an appeal was taken to this court.

An issue was here formed upon the question, whether the supposed testator was at the time the said instrument was executed of sane mind, and upon the trial of that issue, at April term, 1828, the jury found that the said supposed testator was not at the said time of sane mind.

*Sullivan*, attorney general, and *Woodbury*, of counsel with the executor, then contended, that the said instrument must, notwithstanding the verdict, stand as the last will and testament of the said Joseph Noyes.

1st, Because the said executor being the testamentary guardian of the said children, and he being present at the probate of the will on the hearing in 1818, the will must be considered as proved in solemn form on that hearing.

2d, Because at the time when the petition was presented to the judge of probate, praying a hearing for the probate of the instrument in solemn form, there was no law which warranted such a proceeding.

*C. H. Atherton*, of counsel with the heirs.

After the cause had been most ably and elaborately argued by the learned counsel, the opinion of the court was delivered by RICHARDSON, C. J.

One of the grounds, on which the counsel for the appellee in this case rely, is, that the executor being the testamentary guardian of the heirs at law, and he being present at the probate of the will in 1818, the instrument must now be considered as proved in solemn form at that time, notice to the guardian being in law notice to the wards.

It must be conceded, that if the will was originally proved in solemn form, no further hearing on the subject can be had. In that case the application of the heirs, praying a hearing for the probate of the instrument in

solemn form, was founded in mistake, and all the proceedings must now be dismissed.

But what is a probate in solemn form? We understand it to be a probate made by the judge, after all persons whose interests may be effected by the will have been duly notified, and had an opportunity to be heard on the subject, Lovelass, 211—213 ; Godolphin, 62.

How are the facts in this case ? The instrument, which is in controversy, will, if finally established, take from these appellants, it is believed, nearly two thirds of the whole estate. At the time the instrument was offered for probate in 1818, the oldest of these appellants was under the age of thirteen years. They were all of years too tender to admit the supposition, that they were capable of taking care of their own interest. Yet, when the instrument was first proved in 1818, there was nobody to look after the interest of these children, except their testamentary guardian, the executor. And how did the executor stand ? Ten thousand dollars are given by the will to a literary institution, to be established by the executor, and the trustees to be named by him, and he was made residuary legatee. His interest then was in direct opposition to the interest of these children ; and it is no matter of surprise that the instrument should, under such circumstances, have been allowed as the last will of the deceased, although it has since been clearly shown that he had not, at the time he put his signature to the instrument, any capacity to make a will. Can notice to the guardian in such a case, be deemed notice to the wards in such manner as to give to the first probate the effect of a probate in solemn form ? Most surely not, so long as the law of the land has any foundation in common sense and common honesty. If it could be, the law would leave the interests of the children, in a case like this, in the precise situation of the kid committed to the wolf for safe keeping. We are clearly of opinion that no probate of the will could have had the effect of a probate in solemn

Noyes et a.
*v.*
Barber.

form, unless guardians of the children were appointed—guardians having at least no interest adverse to the interests of their wards, and such guardians notified of the time when the will was to be offered for probate and having an opportunity to be heard. Nothing short of this could give to the probate the effect of a probate in solemn form.

We therefore think this objection wholly without foundation.

One other ground upon which the appellee's counsel have relied, is, that the statute of June 22, 1814, repeals the common law, in relation to a hearing for the probate of a will in solemn form after it has been proved in common form. The language of that statute is, that "no hearing for the probate of any will in solemn form shall be granted, had, or sustained, by or before any probate court in this state, unless petitioned for within six years next after the probate of said will in common form." There is in the statute a saving clause in favour of " any infant, *feme covert*, persons imprisoned, or beyond sea, without the United States, or *non compos mentis*," and allowing such persons two years from the time the inability shall be removed. It is urged that these provisions annul the common law and are substituted in its place.

It is then contended, that the statute of July 2, 1822, repeals the statute of 1814, except so far as the last mentioned statute repeals the common law. The language of the statute of 1822, is, that the statute of 1814, and other acts, be repealed after the last day of December, 1822, " excepting so far as they repeal other laws." It is argued, that " other laws" here, mean not only statutes, but the common law.

It is then insisted, that the statute of July 2, 1822, section 8, which enacts, " that in case any will which may be proved without notice to the parties interested, shall hereafter be so proved, any party interested shall be en-

titled to have the probate thereof reexamined, before the probate court for the county in which it was so proved," applies only to wills proved after the passing of the statute.

Thus it seems, that the premises on which counsel rely are, that the common law, in relation to the reexamination of the probate of a will, is annulled by the statute of 1814, that this statute is repealed, except so far as it annulled the common law, and that the statute of July 2, 1822, section 8, applies only to wills proved after the passing of that act.—The conclusion drawn from these premises is, that there is now no law authorising a reexamination of the probate of any will, which was proved and allowed in the year 1818.

Counsel have certainly urged this argument with great ingenuity, but after the most attentive consideration of the subject we are compelled to say, that the impressions which we at first had in relation to the question have not been altered.

We entertain no doubt that the provisions of the statute of July 2, 1822, section 8, are altogether prospective, having no application to wills which had been previously proved. But it seems to us, that the view which counsel have taken of the statute of 1814, and upon which the whole argument rests, is very far from a true view of the nature of the provisions of that statute.

In order to understand the effect of the statute of 1814, it will be useful to consider how the common law stood upon this subject, when that statute was passed.

It is not disputed that previous to the statute of 1814, the probate of a will in common form might be reexamined in solemn form.

The case of *Whittle* v. *Parker*, in this county, in the year 1807, and the case of *Ward's will*, in Rockingham, November, 1813, are directly in point. 1 N. H. Rep. 199, *Merrill* v. *Sherburne*.

It is laid down by Godolphin, 62, that the probate of

a will in common form may be reexamined at any time within thirty years next after such probate.

Such was the law when the statute of 1814 was passed. That statute did not annul the common law. It gave no right to any person to have the probate of a will reexamined in any case, but was founded upon the supposition that the right already existed. It neither gave nor took away any right, but merely limited the exercise of the right. It was, in fact, a mere statute of limitations.

Then came the statute of 1822, repealing the statute of 1814, excepting so far as that statute repealed other laws. Now, admitting, that by "other laws," the common law was here intended, a proposition altogether new, and not to be adopted without a very thorough examination of the consequences to which it might lead, let us see how far the statute of 1814 repealed the common law.

The only effect of that statute was, to reduce the time within which applications for a reexamination of the probates of wills must be made from thirty, down to six years next after the probate, with certain exceptions. Such an effect cannot be properly considered a repeal of the common law. It is at most a mere modification of it. It can in no sense be considered a repeal of the common law, except so far as relates to applications made after the time limited in the statute.

If it be admitted, then, that the statute of 1814 was a repeal of the common law, so far as it went, and that the intent of the repealing act of 1822 was to leave the statute of 1814 in operation, so far as it altered the common law, this does not affect the right of these appellants to have the probate of this will reexamined. For this application was within the time prescribed by the statute of 1814.

The law on this subject seems to us to be so clear, that no ingenuity can cast upon it even the shadow of a doubt. The statute of 1814 is a mere statute of limita-

tions. The statute of 1822, section 8, applies only to wills proved after that time. The repealing act of 1822, declared, that the statute of 1814 should be repealed from and after the last day of December, 1822, but with a proviso that the said act of 1814 should continue in force, in relation to all proceedings had and instituted, and all rights acquired under the act before the 1st January, 1823. Now it seems to us, that the intention of this proviso was to leave the law in relation to all wills proved before the 1st January, 1823, precisely as it had been before the statute of 1822 took effect. The only object of the legislature was, to change the law in relation to future cases, leaving the repealed law in force as to all wills that had been proved. This seems to us to be the plain and obvious meaning of the proviso. The terms, " all proceedings had and instituted, and all rights acquired," are broad enough to embrace all cases pending when the proviso was enacted, and all that had been decided.

In this case, the will had been proved in common form, but the probate was subject to be reexamined, on the application of these appellants, at the time the act of 1822 passed. Now, that a will so situated, was a proceeding had and instituted within the meaning of the proviso, we have not been able to doubt.

But even if this be not the meaning of the proviso, the act of 1814 is repealed, the law of 1822 applies only to future cases, it is therefore clear, that these appellants have, by the common law, a right to have the probate of this will reexamined at any time within thirty years next after the probate.

It seems to have been supposed by the counsel of the appellee, that the appellants cannot succeed in this case, without invoking the protection of the constitution. But it does not seem so to us. These appellants derive their right to prosecute this application from the common law, and we think that there is no statute in existence that

can be construed to abridge, or in any way to affect this right.

We are, therefore, of opinion, that the decree of the court below must be reversed, and the instrument in question be disallowed.