Probate Court, Hillsborough County
No. 78-192

EDWIN C. ROSS, & a.

v.

PHILIP A. CARLINO, EXECUTOR

u/w/o JEAN C. WARDEN

March 7, 1979

*Clancy & O'Neill*, of Nashua (*Frank B. Clancy* orally), for the contestant.

*Sweeney & Sweeney*, of Nashua (*J. Leonard Sweeney, Jr.* orally), for the proponent.

*Michael B. O'Shaughnessy*, of Manchester, by brief and orally, for Irene Dove.

GRIMES, J.   This is an appeal from certain rulings of the probate court made during and after a hearing on a petition to reexamine the will of Jean C. Warden in solemn form. RSA 552:7 (Supp. 1977). The issues presented are first, whether the probate court erred in ruling on a subscribing witness' availability, RSA 552:12, on the basis of hearsay evidence alone, and second, whether the court erred in refusing the contestant's request for a transfer of issues to the superior court for a jury trial pursuant to RSA 567-A:10 (Supp. 1977). We hold that the court correctly denied the request to transfer issues, but that it erred in ruling on the availability of a witness on the basis of hearsay evidence alone.

While in the hospital on May 21, 1976, Jean C. Warden executed an instrument purporting to be her last will and testament. The instrument had been drawn, at the testatrix's request, through the agency of a Mr. Philip Carlino, executor under the instrument. It was typed by a legal secretary in accordance with a lawyer's dictated instructions and delivered to the hospital by the secretary. The record would support findings that Mr. Carlino read the will to testatrix and that she signed the instrument in the presence of three subscribing witnesses, all of whom then signed in the presence of each other. One of the witnesses, Laura Blakesley, was at that time a patient in a bed beside the testatrix. Shortly thereafter, on June 3, 1976, the testatrix died.

On October 19, 1976, a hearing was held in the probate court upon the petition of Edwin C. Ross (the contestant) and Nashua Association for Retarded Children, Inc., to reexamine in solemn form the testatrix's will. The executor produced and caused to be examined two of the subscribing witnesses. The third witness, Mrs. Blakesley, was subpoenaed by the executor but was not produced. Instead, the executor introduced a letter purporting to be from Mrs. Blakesley's physician that stated that the witness was too ill to testify either in court or at home. The contestant moved for a continuance for the purpose of summonsing the doctor to determine if the witness was indeed "una-

vailable" for purposes of RSA 552:12, and to inquire into the witness' competency at the time of execution. The motion was denied and the will was confirmed on October 19, 1976.

The contestant, on November 3, 1976, filed an appeal asking for a jury trial in the superior court pursuant to RSA 567-A:10 (Supp. 1977), and petitioned the probate court to certify and transfer issues to the superior court for jury trial. Ruling that the contestant had failed to comply with the procedural requirements set forth in RSA 567-A:10 (Supp. 1977) and Rule 34 of the Rules of the Probate Court (approved January 26, 1976), the court denied both requests. The contestant then filed an appeal to this court, claiming error and an abuse of discretion in the court's affirmation of the will upon the testimony of only two witnesses and in the court's denial of the petitions for a transfer of issues. Contestant also claims a right to an extension of the time for appeal to the superior court under RSA 556:28 and RSA 567-A:5 (Supp. 1977). His exceptions were reserved and transferred by *Copadis*, J.

The contestant first contends that the probate court should not have ruled on the availability of the third subscribing witness on the basis of the doctor's letter alone, and that it was error to deny him the opportunity to inquire into the witness' competency at the time of execution of the will. After careful review of the record and the case law regarding probate in solemn form, we find ourselves in agreement with his argument.

Wills may be proved in this State by two procedures, probate in common form (RSA 552:6), or probate in solemn form (RSA 552:7 (Supp. 1977)). Both forms are borrowed from the early common law, and neither has suffered substantial change in the interim. *Knight v. Hollings*, 73 N.H. 495, 63 A. 38 (1906) (common form); *In re Pafelis Estate*, 108 N.H. 265, 233 A.2d 825 (1967) (solemn form).

The substance of a proceeding in common or solemn form is found in common-law precedent, while venue and time limitations are found in the statutes. *Noyes v. Barber*, 4 N.H. 406 (1828); 3 W. TREAT, PROBATE LAW §§ 1035, 1043 (1968). In the present case, there is no dispute concerning the timing of the petition to reexamine the decedent's will. What is disputed, however, is whether, under the procedures here employed, the probate court could properly find that the will had been attested and subscribed by three "credible," meaning competent, witnesses as required by RSA 551:2. *Hodgman v. Kittredge*, 67 N.H. 254, 32 A. 158 (1892); *Lord v. Lord*, 58 N.H. 7, 8 (1876). We hold he could not.

It is axiomatic that the proponent of a will carries "the burden of proving its due execution." *Albee v. Osgood*, 79 N.H. 89, 90,

105 A. 1, 2 (1918). In a will contest, the propounding party has the ultimate "burden of proof as to every fact which is necessary to the validity of a will." 3 J. BOWE & D. PARKER, PAGE ON WILLS § 29.33, at 474 (1961); *accord, Albee v. Osgood supra; Hardy v. Merrill*, 56 N.H. 227 (1875). The proponent, therefore, although aided by a host of presumptions, retains the burden of persuasion throughout the probate proceeding. The contestant, on the other hand, once the proponent makes out his prima facie case, suffers a shift in the burden of moving forward with evidence showing a failure of due execution. *See Perkins v. Perkins*, 39 N.H. 163, 171 (1859); 3 J. BOWE & D. PARKER, PAGE ON WILLS § 29.33, at 478 (1961); 80 AM. JUR. 2d *Wills* § 953, at 116–17 (1975). Thus, even though it was the contestant in the present controversy who sought the petition for reexamination, the proponent had the burden of proving in solemn form the due execution of the will.

In *Perkins v. Perkins*, 39 N.H. 163 (1859), this court addressed the common-law practice of proof in solemn form:

> The object of the proceeding is to prove the due execution of a written instrument. In most cases such proof is offered in order to [sic] the admission of the instrument in evidence, but in the case of the proof of a will, the evidence is offered to lay the foundation of a decree that the will has been proved.
> . . . The instrument itself must be produced, unless, in a few excepted cases, where secondary evidence is admitted; and the attesting witnesses must be produced and examined, if they are living and within reach of the process of the court. They are to be produced by the party who offers the instrument in evidence, or who seeks a decree that it has been proved.

*Perkins v. Perkins*, 39 N.H. at 167. *See also* 3 W. TREAT, PROBATE LAW § 1039, at 65–66 (1968). The essence of probate in solemn form, therefore, is the offer of notice and an opportunity to be heard to all interested persons. *See Noyes v. Barber*, 4 N.H. 406, 409 (1828); 3 W. TREAT, PROBATE LAW § 1043, at 70 (1968). And contrary to the proceeding in common form, where only one witness need be offered, RSA 552:6, the proceeding in solemn form requires the production of all three subscribing witnesses, if they are available. *Daley v. Judge of Probate*, 90 N.H. 381, 382, 10 A.2d 239, 240 (1939). *See also* RSA 552:12.

RSA 552:12 provides: "If the attesting witnesses, after the execution of a will, become incompetent from any cause, or if the court determines that the testimony of such witnesses is unavailable under the circumstances, the will may be proved and allowed upon other

satisfactory evidence." As indicated in the prior citation, this statute is a mere codification of prior common law. It means simply that if a witness is found to be unavailable at the time of probate, the proponent is excused from his obligation of producing that witness. Nonetheless, there must be a hearing on and a finding of unavailability, and the propounding party is obliged to prove it to the satisfaction of the court. That obligation is implicit in both the statute and the common law.

█ █ Moreover, even assuming a finding of unavailability, the will must still be proved "upon other satisfactory evidence." RSA 552:12. Though proving the signature of an unavailable witness raises a presumption of the witness' competency at the time of execution, *Daley v. Judge of Probate*, 90 N.H. at 382, 10 A.2d at 240–41, that presumption serves only to make out the proponent's prima facie case. *Perkins v. Perkins*, 39 N.H. at 169–70. *See also* 3 W. TREAT, PROBATE LAW § 1039, at 66 (1968). It is a rebuttable presumption, and it is subject to contest through evidence of a contrary nature. In the end, the probate judge must find that the instrument was "attested and subscribed . . . by three or more credible witnesses." RSA 551:2.

█ In the present case, the proponents of the will of Jean C. Warden sought to show the unavailability of an attesting witness solely through a letter from her physician. That letter, however, was pure hearsay, and under the circumstances was not within any of the recognized exceptions to the hearsay rule. The contestant sought to challenge the asserted unavailability of the witness by asking for a continuance in order to question the physician and depose the witness, but his request was denied. By not allowing a full hearing regarding the availability of the witness, the court denied the contestant the opportunity to contest the witness' availability and competency. More importantly, the proponent was relieved of a major part of his evidentiary burden on the basis of hearsay evidence alone. This we cannot countenance.

█ We are not convinced, however, by the contestant's argument that the court erred in denying his request for a transfer of issues pursuant to RSA 567-A:10 (Supp. 1977). That statute provides an alternative avenue of contest regarding "material facts which are in dispute." It allows interested persons to "petition the probate court to certify the issues of fact to the superior court . . . for ascertainment by jury trial." Nevertheless, the availability of this procedure is strictly limited: "Any such petition for jury trial shall be made within the time limits prescribed by rule promulgated by the judges of probate. . . ." *Id.* Probate Court Rule 34 plainly limits actions under

RSA 567-A:10 (Supp. 1977) to petitions "filed not later than five (5) days prior to the date of hearing on such matter; except, for good cause shown." In the present case, the contestant failed to take advantage of the jury issue procedure in the proper manner; only after losing on the merits in the probate court did he petition for a jury trial. RSA 567-A:10 (Supp. 1977) is not intended to give the losing party in probate proceedings a second chance to try the facts. Neither can attorneys successfully argue that the statute itself is insufficient to put them on notice of possible procedural restrictions contained in the probate rules. The statute refers directly to those rules. We hold that the court committed no error in denying contestant's petition for a jury trial.

The contestant finally argues that he should be allowed a jury trial under RSA 556:28 or RSA 567-A:5 (Supp. 1977). RSA 556:28 is wholly inapposite to will contests. Challenges to the due execution of a will are not a "claim against [an] estate" encompassed within the scope of RSA ch. 556. Nor is the contestant helped by RSA 567-A:5 (Supp. 1977). That statute relates to late appeals to the supreme court, and not to certification of issues to the superior court. *See Chesley v. Estate of Chesley*, 117 N.H. 280, 372 A.2d 281 (1977).

Notwithstanding our finding of error, we hold that the record supports the probate court's confirmation of Mrs. Warden's will insofar as it rests on a determination that the instrument was made by one "of sound mind, in writing, signed by the testator . . . and attested and subscribed in his presence" by *two* credible witnesses. RSA 551:2. The statute, however, requires subscription and attestation by "three or more credible witnesses." *Id.* We must remand solely for a determination of the present availability of the third witness and her competency at the time of execution.

All concurred.
*Exceptions sustained in part and overruled in part; remanded.*