Probate Court, Merrimack County
No. 78-193

*In re* ESTATE OF KATHERINE E. FULLER

March 7, 1979

*Alexander M. Lachiatto*, of Franklin, by brief and orally, for Clark S. Fuller *et al.*, proponents of the will.

*Sheehan, Phinney, Bass & Green P.A.*, of Manchester (*Claudia C. Damon* orally), for Edward Marr *et al.*, contestants.

GRIMES, J.   The issues in this will contest concern the sufficiency of evidence to support the allowance of an unexecuted ribbon copy of a lost will and the amount of proof necessary to overcome a presumption that a lost will was revoked. Exceptions of the contestants were transferred by *Copadis*, J.

Katherine E. Fuller died on December 12, 1976, at age eighty-one years. A heavy 4-1/2″ x 11″ brown envelope was found among her papers. It had the word "Will" written at the top, and the deceased's name written about midway down the front. There was testimony that this was in the handwriting of the deceased and that the envelope was sealed in several places with two different kinds of gummed paper name seals, all bearing the name Mrs. Sears Fuller and her address. The remains of the seals are still present on the envelope, which was introduced as an exhibit at trial.There was no will in the envelope when the seals were broken, an exhaustive search has not produced

one, and inquiries have not discovered evidence that she made a will after 1961.

Two stepsons, Clark and John Fuller, petitioned the probate court to have accepted for probate a conformed but unexecuted ribbon copy of a will dated July 1, 1961. Certain heirs of the deceased appeared in opposition. Two of the subscribing witnesses appeared and testified to the due execution of the original will on July 1, 1961, and to the soundness of the deceased's mind at that time. The third witness had died and therefore was unavailable. RSA 552:12.

Both stepsons testified that the deceased had shown them the envelope and stated that it contained her will. Clark testified that the last time she stated that her will was in the brown envelope was December 1975 or January 1976, and that the seals were intact at that time. It was findable from the evidence that the deceased continued to be on good terms with her stepsons, both of whom shared in her estate under the 1961 will, and that they visited her at least once a week. Clark had a power of attorney and conducted her affairs for her when she was unable to do so.

There was conflicting testimony regarding her mental condition. A doctor who had attended her from time to time since about 1967, and who was a member of a board of inquiry, which in February 1976 declared her incompetent, testified she had been incompetent since 1971. The doctor opined that although she may have had lucid intervals between then and 1973, she had no periods of rationality after that. The stepsons, however, testified that she did have rational periods and that she was rational when, in December of 1975 or January 1976, she showed Clark the envelope and stated that her will was in it.

The probate court stated that the evidence showing that the deceased "entertained a kindly and loving feeling toward the beneficiaries under the will," and that the stepchildren "had been close to her for many, many years carried weight toward the conclusion of nonrevocation of the will." The court also found that the deceased was "mentally incompetent at the probable time of the disappearance of the will and that she could not have had the capacity to destroy it *animo revocandi*." *See Lane v. Hill*, 68 N.H. 275, 283, 44 A. 393, 397 (1895); Annot., 3 A.L.R.2d 949, 985 (1949).

■■ The law in this State with regard to the proof of a lost will is sparse. However, *Lane v. Hill*, 68 N.H. 275, 44 A. 393 (1895), furnishes sufficient authority for proving such a will by parol, as in the case of any lost instrument, provided its due execution is proved and it can be found to have been lost and not destroyed by the testator with the

intent to revoke it. That same case, however, is also authority for the rule that "where a will [, which cannot be found,] is proved to have been once duly executed, [and] to have remained afterward in the testator's possession, or was last heard of in his custody, . . . the presumption is that it was destroyed by him *animo revocandi.*" *Id.* at 283, 44 A. at 397.

On the basis of *Lane v. Hill supra*, we reject the contention that the probate court had no authority to approve and allow an unexecuted ribbon copy of a will. Contestants argue that the probate court erred in not applying the beyond-a-reasonable-doubt test to overcome the presumption that the will had been destroyed with the intent to revoke it. Although the court denied the request that the reasonable doubt test was applicable, it did grant a request that the degree of proof required "is that the evidence must be greater than a preponderance."

We uphold the probate court's rejection of the reasonable doubt test as a requirement for overcoming the presumption of revocation. Another presumption relating to wills is the presumption of sanity of the testator. *See Perkins v. Perkins*, 39 N.H. 163, 168 (1859). That presumption has been held to be one of fact that is overcome by proof to the contrary. Once evidence is introduced "the issue is to be determined by the preponderance of the whole evidence." *Id.*

The presumption of revocation has also been said to be one of fact and not of law. *Managle v. Parker*, 75 N.H. 139, 141, 71 A. 637, 638 (1908). Generally in this State, presumptions only take the place of evidence, and when evidence appears, "if only to the extent that an inference may be drawn from it, the presumption vanishes." *Jodoin v. Baroody*, 95 N.H. 154, 157, 59 A.2d 343, 345 (1948). *See also Ross v. Carlino*, 119 N.H. 126, 399 A.2d 292 (1979). It is thus clear that proof beyond a reasonable doubt is not necessary to overcome the presumption of revocation. As shown by the granting of contestants' request No. 8, the probate court made its finding of nonrevocation based on a higher standard than by a mere preponderance. The contestants were not entitled to have any higher standard applied.

The evidence supports the court's finding that the will was lost and not revoked. The evidence that the deceased maintained the same relationship to the beneficiaries as she had at the time the will was executed, and that nothing occurred which would be likely to change her mind with regard to the legatees is evidence that tends to negate revocation and tends toward nonrevocation. *In re Morgan's Estate*, 389

Ill. 484, 59 N.E.2d 800 (1945). *See also* Annot., 3 A.L.R.2d 949, 975 (1949).

The record would also support a finding that as late as December 1975 or January 1976, the deceased had in fact lost the will but continued to believe that it was contained in the sealed envelope that she displayed to her stepsons stating that it contained her will. One possibility is that during one of her periods of confusion and disorientation, of which there was evidence, she sealed the envelope believing it contained the will when in fact it did not. Her repeated expressions of such a belief negate the contention that she intended to revoke the will. Moreover, the probate court found that the deceased was incompetent to revoke the will at the time of its probable disappearance. This finding is supported by the testimony of the doctor who had attended her over a period of time. Although there was evidence to support a contrary finding, such a contrary finding was not compelled, and the other evidence was sufficient to support the finding of nonrevocation even if she were competent.

*Exceptions overruled.*

All concurred.