USCA1 Opinion

 

 February 13, 1996 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-1735 No. 95-1558 ROGER F. ALEXANDER, ETC., ET AL., Petitioners, v. IMMIGRATION AND NATURALIZATION SERVICE, Respondent. ____________________ ERRATA SHEET The opinion of this Court, issued on January 31, 1996, should be amended as follows: On cover sheet, line 1 of attorney listings, replace "William A. ___________ Maganiello" with "William A. Mangiello". __________ ____________________ UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-1735 No. 95-1558 ROGER F. ALEXANDER, ETC., ET AL., Petitioners, v. IMMIGRATION AND NATURALIZATION SERVICE, Respondent. ____________________ ON PETITION FOR REVIEW OF AN ORDER OF THE BOARD OF IMMIGRATION APPEALS ____________________ Before Boudin, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ ____________________ Michael G. Hillinger with whom William A. Mangiello was on briefs ____________________ _____________________ for petitioners. Carl H. McIntyre, Jr., Office of Immigration Litigation, Civil ______________________ Division, Department of Justice, with whom Stuart M. Gerson, Assistant ________________ Attorney General, Civil Division, Frank W. Hunger, Assistant Attorney _______________ General, Civil Division, and David J. Kline, Assistant Director, were ______________ on briefs for respondent. ____________________ January 31, 1996 ____________________ BOUDIN, Circuit Judge. Petitioner Roger Alexander, _____________ named Roger Alexander Hobbs at birth, was born in Great Britain on February 13, 1945, son of Sarah Hobbs and, he alleges, Floyd Alexander, an American serviceman. Roger was unaware of his true father until 1968, when he discovered that the man whom he believed to be his father had died in 1943. His mother then told him that his father was in fact Floyd Alexander. Sometime after Floyd's death in 1970, Roger established contact with his supposed American half-siblings. In 1984, Roger, his wife Anne, and their three sons moved to the United States.  In 1985, Roger filed an application for a certificate of U.S. citizenship which was denied the following year. Some months after Roger filed the application, the Immigration and Naturalization Service ("INS") served an order to show cause on Roger and Anne, charging that they were deportable under 8 U.S.C. 1251(a)(2), on the ground that they had overstayed their non-immigrant visas. Roger contested this order by presenting a claim to derivative citizenship through Floyd.  The INS held three days of hearings on Roger's citizenship claim in Boston in 1987 and 1988. On September 22, 1988, the immigration judge entered an order denying Roger's claims, finding the Alexanders deportable, and granting their request for voluntary departure. That order was appealed to the Board of Immigration Appeals; on June 9, -2- -2- 1992 the Board dismissed the Alexanders' appeal, holding that Roger had not met the statutory requirements for derivative citizenship under 8 U.S.C. 1401 and 1409. The Alexanders filed a motion for reconsideration which the Board denied. The Alexanders then filed in this court a timely petition for review, which we now grant.  8 U.S.C. 1105a(a)(5) provides that whenever a petitioner, who seeks review of an order of deportation, claims to be a national of the United States and makes a showing that his claim is not frivolous, the court shall (A) pass upon the issues presented when it appears from the pleadings and affidavits filed by the parties that no genuine issue of material fact is presented; or (B) where a genuine issue of material fact as to the petitioner's nationality is presented, transfer the proceedings to a United States district court . . . for hearing de novo . . . . The government does not contest that Roger has alleged a viable theory of citizenship. The only question for our decision is whether there is a "genuine issue of material fact" for determination by the district court. Agosto v. ______ INS, 436 U.S. 748, 754 (1978). This standard is analogous to ___ that governing motions for summary judgment under Fed. R. Civ. P. 56. Anderson v. Liberty Lobby, 477 U.S. 242, 248 ________ _____________ (1986).  If Roger has a statutory claim to U.S. citizenship, it -3- -3- is by operation of 8 U.S.C. 1409(b),1 which states in relevant part that the provisions of section 1401(g) of this title shall apply to a child born out of wedlock on or after January 13, 1941, and before December 24, 1952, as of the date of birth if the paternity of such child is established at any time while such child is under the age of twenty-one years by legitimation.  18 U.S.C. 1401(g) provides that the foreign-born child of parents, one of whom is a U.S. citizen and one of whom is an alien, is "a citizen . . . at birth" if the U.S. citizen parent resided in the United States for a statutorily defined period prior to the child's birth. Thus, to show that he was a U.S. citizen at birth, Roger must prove that (1) Floyd was his father; (2) Floyd was a U.S. citizen who satisfied the physical presence requirements of section 1401(g); and (3) Floyd's paternity was established prior to Roger's 21st birthday. Enough evidence at the INS hearing indicated that Floyd was Roger's biological father, and Floyd was admittedly a U.S. citizen who satisfied the physical presence requirements. So this appeal turns on whether there is also a genuine factual dispute as to whether Roger was legitimated prior to his 21st birthday.  ____________________ 1Roger argues that he qualifies for citizenship under 8 U.S.C. 1409(a), but it is clear that current section 1409(a) does not apply to individuals born prior to November 15, 1968. See 102 Stat. 2619 (1988). And former section ___ 1409(a) applies only to individuals born on or after December 24, 1952. 66 Stat. 238 (1952). -4- -4- At the hearing before the immigration judge, Roger offered the affidavit of David Klickstein, now deceased, a Maine attorney and notary public. According to the affidavit, in 1955 Floyd signed a document acknowledging that Roger was his son; Klickstein notarized the document but did not keep a copy, nor was any copy offered at the hearing. Roger also offered testimony by Floyd's first wife that Floyd had told her that he had executed the alleged affidavit. Floyd's alleged document, if made and acknowledged as described in Klickstein's affidavit, legitimated Roger as Floyd's son under Maine law in 1955, when Roger was under age 21. See 8 U.S.C. 1101(c)(1) (providing that state law ___ governs).2 To be sure, the Board found the Klickstein affidavit unconvincing, saying that Roger's "claim that his father executed a purported document acknowledging paternity is not adequately supported." But under the unusual statutory procedure already described, this court does not review that finding under a substantial-evidence or other customary standard. Once a genuine material issue of fact is posed, the statute entitles Roger to a trial de novo in the district _______  ____________________ 2Under Maine law in 1955, "[i]f the father of a child born out of wedlock adopts him or her into his family or in writing acknowledges before some justice of the peace or notary public that he is the father, such child is . . . the heir and legitimate child of his or her father." 4 Me. Rev. Stat. c. 170, 3 (1954), repealed by 1979 Me. Laws ch. 540, ___________ 24-C.  -5- -5- court. 8 U.S.C. 1105a(a)(5). On appeal the INS argues that the absence of the actual document is fatal to Roger's claim as a matter of law. We disagree: there is nothing in the language of the Maine statute to indicate that the continued existence of the document is essential to legitimation, nor does the INS refer us to any Maine case law to support this view. To the contrary, the statute indicates that it is the creation of the document, not its preservation, that matters. Cf. In re ___ _____ Joyce's Estate, 183 A.2d 513, 514 (Me. 1962). ______________ Although it might surprise a lay person to see how little importance we attach to the preservation of the affidavit, no lawyer would be surprised. A will, for example, must be made and executed with startling formality, but if lost or misplaced may be proved by oral evidence. E.g., In re Estate of Fuller, 399 A.2d 960, 961 (N.H. 1979). ____ _______________________ Indeed, the whole tendency of the law of evidence governing documents is to demand the original if available but to forgive its absence if explained. See Fed. R. Evid. 1004. ___ Of course, Roger must prove that his legitimation occurred but this is a matter for the district court.3  ____________________ 3The Board apparently considered the Klickstein affidavit at the hearing but found it insufficient. As the issue has not been raised by the INS, we have no occasion to consider whether the affidavit would be admissible in district court under a hearsay exception, e.g., Fed. R. Evid. ____ 804(b)(5), whether the rules of evidence would be strictly applied in a proceeding before the district judge, or whether -6- -6- The INS argues in the alternative that even if Roger became a "citizen . . . at birth" under section 1401(g), he lost his citizenship under the retention requirements of former section 1401(b). That section originally provided, with a qualification not here pertinent, that anyone who became a citizen under section 1401(g) lost his citizenship unless he came to the U.S. before age 23 and remained for at least five years. 66 Stat. 235 (1952). Roger admits that he does not satisfy this requirement, nor a slightly less rigorous version later enacted. See 92 Stat. 1046 (1972). ___ Although the retention requirement was repealed entirely in 1978, the repeal was by its own terms not retroactive. 92 Stat. 1046. We were therefore initially disposed to conclude that Roger's section 1409(b) claim was barred by the retention requirement. However, in the course of preparing the opinion, the court encountered a 1994 amendment, codified at 8 U.S.C. 1435, that provides relief as follows:  A person who was a citizen of the United States at birth and lost such citizenship for failure to meet the physical presence retention requirements under section 1401(b) of this title (as in effect before October 10, 1978), shall, from and after taking the oath of allegiance required by section 1448 of this title be a citizen of the United States and have the status of a citizen of the United States by birth, without filing an application for naturalization . . . .  The effect of this language appeared to allow Roger to escape  ____________________ other more readily admissible evidence exists to show that Floyd's statement was prepared and notarized. -7- -7- the retention requirement merely by filing an oath of allegiance. See 8 U.S.C. 1448 (prescribing oath). ___ Confident that the INS would wish to see justice done, we asked the parties to address this provision in supplemental briefs. Roger replied that he had not yet taken such an oath but proposed to do so. The INS, in its reply, did not deny that the oath would erase the bar of former section 1401(b). But it argued that this court has "no jurisdiction" to consider the 1994 amendment issue because that would require consideration of evidence not appearing "upon the administrative record upon which the deportation order is based." 8 U.S.C. 1105a(a)(4). Section 1105a(a)(4), like many counterparts, e.g., 5 ____ U.S.C. 706; 29 U.S.C. 160(e) and (f), is intended to prevent a reviewing court from considering evidence not before an administrative agency, i.e., to assure that agency ____ findings are reviewed upon the record made before the agency. Cf. Camp v. Pitts, 411 U.S. 138, 142 (1973). Nothing in such ___ ____ _____ provisions prevents a reviewing court from applying correct legal principles to a dispute, whether or not previously _____ identified in the agency proceeding. And if former section 1401(b) is now a hollow shell, the INS' argument fails as a matter of law. Of course, Roger did not rely upon the 1994 amendment (nor did the INS mention it to us in its brief). Failure to -8- -8- raise an argument in timely fashion means that a reviewing court is free to disregard it. Thomas v. INS, 976 F.2d 786, ______ ___ 789 (1st Cir. 1992). But the law that was overlooked (the 1994 amendment) is not disputed, Congress' intent to preserve citizenship on condition is apparent, the condition can be mechanically satisfied, and the right in question--American citizenship--is one of the most precious imaginable. We therefore transfer this case to the district court for trial de novo. 8 U.S.C. 1105a(a)(5). We do not at this _______ time pass upon any alternative constitutional claims made by Roger. The district court may require Roger to present evidence within a reasonable time that he has executed the oath prescribed by 8 U.S.C. 1448; if Roger fails to do so, the district court may dismiss on that ground alone. Otherwise, the court should proceed to the merits of his claim under section 1409(b).  It is so ordered. _________________ -9- -9-