658

*In re* ESTATE OF KATHERINE F. WASHBURN

March 12, 1997

*Griffin, Swanson & Gleichman, P.A.*, of Portsmouth (*Peter A. Gleichman* on the brief and orally), for the respondent.

*Sheehan Phinney Bass + Green, P.A.*, of Portsmouth (*Michael C. Harvell* and *Thomas M. Closson* on the brief, and *Mr. Closson* orally), for the petitioner.

HORTON, J. The respondent, Barbara A. Remick, the principal beneficiary of the testatrix's April 1992 will, appeals an order of the Rockingham County Probate Court (*O'Neill*, J.) holding that the testatrix lacked the testamentary capacity necessary to execute the will. We affirm.

Katherine F. Washburn, the testatrix, executed three wills that were put in evidence before the probate court. In the first will, dated October 1986, she left $1,000 bequests to several named individuals and provided that her Portsmouth home, personal effects, and the residue of her estate should go to her sister, Margaret Fay, or in default thereof to her niece, Catherine Colonna, the petitioner in this action. In March 1992, the testatrix executed the second will, which left $1,000 bequests to certain named individuals; $5,000 to

the respondent, her caretaker and companion; and the residue to petitioner. The testatrix's final will, executed approximately three weeks later in April 1992, left $5,000 bequests to the petitioner and another individual and provided that the respondent receive the residue, which included the testatrix's home and personal estate.

When the April 1992 will was offered for probate by the executor of the estate, the petitioner challenged the testamentary capacity of the testatrix to execute the will by filing a petition to re-examine the will in solemn form. The probate court held a three-day hearing on proof of the will in solemn form, during which it heard both expert and lay testimony pertaining to the testatrix's mental capacity in April 1992. The court found that the testatrix

> was suffering from Alzheimer's disease at the time of the execution of the April 13, 1992 will, which resulted in her inability to recollect the property she wished to dispose of and understand its general nature, and resulted in her inability to make an election upon whom and how she would bestow the property by her will. Consequently the Court finds, under *Boardman v. Woodman*, 47 N.H. 120 (1866), that the testatrix lacked the testamentary capacity on April 13, 1992 to make a will.

The respondent's motion for reconsideration was denied, and this appeal followed.

The respondent advances two arguments concerning the sufficiency of the evidence before the trial court. We will uphold the findings and rulings of the probate court unless unsupported by the evidence or clearly erroneous as a matter of law. *In re Angel N.*, 141 N.H. 158, 161, 679 A.2d 1136, 1138 (1996). We accord considerable weight to the trial court's judgments on the credibility of witnesses and the weight to be given testimony. *See Echo Consulting Services v. North Conway Bank*, 140 N.H. 566, 571, 669 A.2d 227, 231 (1995).

The respondent first asserts that the evidence produced by the petitioner was insufficient to rebut the presumption of due execution of the will in question. We have long held that every person is presumed to be sane, until there is *some evidence* shown to rebut that presumption. *Pettes v. Bingham*, 10 N.H. 514, 515 (1840); *Boardman v. Woodman*, 47 N.H. 120, 135 (1866), *overruled on other grounds by Hardy v. Merrill*, 56 N.H. 227 (1875); *see also Hardy v. Merrill*, 56 N.H. 227, 233 (1875) (burden of proving capacity remains on will proponent until close of trial, although he need introduce no proof upon point until something appears to the contrary). Upon appellate review, "[t]his court is not generally concerned with the weight of evidence, hence the question is not how much evidence

there was *but was there any . . . which would authorize a finding of lack of due execution or want of competency* in the testator." *Albee v. Osgood*, 79 N.H. 89, 91, 105 A. 1, 2 (1918) (emphasis added).

■ The petitioner offered satisfactory evidence to rebut the presumption of capacity. The medical testimony offered by Dr. Levy and Dr. Christo established that, at a minimum, the testatrix suffered from some degree of Alzheimer's in April 1992 and her behavior could have been affected. Further testimony by petitioner's lay witnesses indicated confusion, forgetfulness, and a lack of competency at the time in question. Because the petitioner met her burden of producing evidence to demonstrate a potential failure of due execution, the trial court correctly found that the presumption of competency was rebutted and the respondent had to prove capacity by a preponderance of the evidence. *See In re Estate of Fuller*, 119 N.H. 132, 135, 399 A.2d 960, 961 (1979).

Second, the respondent argues that no reasonable trier of fact could have found that the testatrix lacked the testamentary capacity to execute her will in April 1992. A thorough review of the record convinces us that the evidence supports the trial court's ruling that the testatrix lacked capacity to execute her April 1992 will. All the testifying physicians agreed that the medical evidence indicated the testatrix had Alzheimer's disease in April 1993, a year after the will's execution. The testimony revealed that Alzheimer's is a progressive disease and that the testatrix had moderate to advanced dementia in April 1993. There was also testimony that the testatrix was suffering from Alzheimer's at the time the will was executed and that the disease could have influenced her competency.

Anecdotal evidence supported the probate court's finding that the testatrix's capacity was adversely affected by the disease. The testamentary intentions of the testatrix were unclear and fluctuated. Her second and third wills were executed just over three weeks apart and contained vastly different provisions. As the probate court found, there were "discrepancies between statements the testatrix made as to how she wished to dispose of her property and the wills she signed in the spring of 1992 including the will at issue." The probate court noted the majority of witnesses testified the testatrix intended to leave the respondent her house in return for the respondent's care and that the petitioner and the respondent's daughter would be treated equally. The testimony on this point, however, conflicts with both the bequests in the March 1992 will, in which the respondent received only $5,000 and the petitioner and the respondent's daughter received different amounts, and the bequests in the April 1992 will, in which the respondent received the testatrix's $50,000 personal estate as well as her home.

There was also testimony regarding the confusion and forgetfulness of the testatrix near the time of the will's execution. The petitioner testified that at the funeral of the testatrix's sister in February 1992, the testatrix failed to recognize her niece, the petitioner's sister. Both the petitioner and the testatrix's attorney testified that the petitioner needed to supplement information the testatrix provided as to her sister's heirs. A funeral home employee stated that after her sister's funeral, the testatrix asked him to send the bill to her, although she had previously paid in person.

We conclude there was sufficient evidence for a reasonable trier of fact to determine, given all the circumstances, that the testatrix was incompetent to execute the will in question. We therefore uphold the probate court's ruling that the testatrix lacked testamentary capacity.

■ The respondent next contends that the probate court committed an error of law by not finding both that the testatrix was deluded as to the extent of her estate and the objects of her bounty, and that the invalidated will was the product of her delusion. The respondent argues that under our standard for testamentary capacity, a finding of dementia is insufficient, alone, to invalidate a will. The probate court must also find the testamentary scheme evidenced in the will was the product of a deluded mind. The respondent argues that because the probate court did not make this second finding, it erred by applying only half the legal test for testamentary capacity.

The standard for testamentary capacity was articulated over a century ago in *Boardman v. Woodman*, 47 N.H. at 122, in which this court upheld the following jury instruction:

> [I]n order to have sufficient mental capacity to make the will, [the testatrix], at the time of making it, must have been able to understand the nature of the act she was doing, to recollect the property she wished to dispose of and understand its general nature, to bear in mind those who were then her nearest relatives as such, and to make an election upon whom and how she would bestow the property by her will; that she must have had the ability, the mental power or capacity to do this; that if she had, the law regarded her as of sufficient mental capacity to make the will; *that if she had not this capacity at the time, &c., the jury would find her not of sane mind; but if at the time, &c., she had this capacity, the jury would inquire further,* for in this case it was claimed that she was laboring under what is called active insanity, of which the test is *delusion;* . . . the mere

fact of the possession of a delusion may not be sufficient to render a person utterly incapable of making a valid will; *that a person of sufficient mental capacity, though under a delusion, may make a valid will*; if the will is in no way the offspring of the delusion, it is unaffected by it; but that if the will is the offspring of the delusion, if the delusion causes it to be made as it is made, or if its provisions in any way result from or are affected by the delusion, it is not a valid will; that the will of a person, who has been or is ordinarily insane, will be valid, so far as this question is concerned, if made at a lucid interval, that is, when the testat[rix] is not in fact insane; is not under delusion . . . .

*Id.* at 122 (emphasis added). Our reading of *Boardman* reveals two distinct inquiries: 1) whether the testatrix possessed testamentary capacity to execute a will; and 2) if the testatrix had such capacity, whether the will is the offspring of a delusion or was executed during a lucid interval. *Id.* The probate court was required to proceed to the second inquiry only if the testatrix possessed testamentary capacity. *Id.; see* 7 C. DEGRANDPRE, NEW HAMP-SHIRE PRACTICE, WILLS, TRUSTS AND GIFTS § 6.03, at 45 (2d ed. 1992). Because the probate court, applying the *Boardman* standard, determined the testatrix did not "recollect the property she wished to dispose of and understand its general nature" and was not capable of "mak[ing] an election upon whom and how she would bestow the property by her will" in April 1992, there was no need to examine whether the will was the product of a delusion or was executed during a lucid interval. *See Boardman,* 47 N.H. at 122.

■ The respondent lastly argues that the ultimate burden of proving lack of testamentary capacity should rest upon the party contesting the will. The petitioner contends that the respondent failed to preserve this issue for appellate review. While it is true that this argument was not presented to the probate court during the hearing, the respondent subsequently included it in her motion for reconsideration. Because the trial court was accorded an opportunity to rule on this issue of law, it was properly preserved for appellate review. *See State v. Tselios,* 134 N.H. 405, 407, 593 A.2d 243, 245 (1991).

In New Hampshire the burden of proving testamentary capacity in will contests remains on the proponent of the will throughout the proceeding. *See Ross v. Carlino,* 119 N.H. 126, 129-30, 399 A.2d 292, 295 (1979). While a substantial number of States place the burden of showing lack of capacity on those contesting the will, we are not alone in our allocation of the evidentiary burden. *See, e.g., Clardy v.*

*National Bank of Commerce*, 555 So. 2d 64, 66 (Miss. 1989); *Estate of Kumstar*, 487 N.E.2d 271, 272 (N.Y. 1985); *Gibbs v. Gibbs*, 387 S.E.2d 499, 500 (Va. 1990); 79 AM. JUR. 2D *Wills* § 103 (1975).

In probate of a will in solemn form, RSA 552:7 (Supp. 1996), the proponent of the will has the burden of proving its due execution. *Ross*, 119 N.H. at 129, 399 A.2d at 295. The proponent is aided in this task by a presumption of capacity accorded the testatrix. *Fuller*, 119 N.H. at 135, 399 A.2d at 961. A will proponent need not introduce any evidence upon the issue of the testatrix's capacity until a will contestant first rebuts the presumption by offering evidence of incapacity. *Perkins v. Perkins*, 39 N.H. 163, 170 (1859). Even if the presumption is successfully rebutted, the proponent is not thereby required, as the respondent argues, to prove a negative — that the testatrix did not lack capacity. Instead, once the presumption is rebutted, the proponent merely retains the initial burden of proving due execution. The proponent must persuade the trial court, by a preponderance of all the evidence presented, that the testatrix possessed the requisite capacity to make the will. *Fuller*, 119 N.H. at 135, 399 A.2d at 961.

The respondent argues that because of the nature of Alzheimer's dementia, our evidentiary burden essentially places in the path of the will proponent the nearly insurmountable obstacle of proving the testatrix did not lack testamentary capacity. We find the respondent's arguments unpersuasive. There was testimony from all three physicians that the testatrix had Alzheimer's disease. There was expert testimony that her competency to execute a will in April 1992 could have been affected. Specific instances of behavior indicating incompetency were then presented to the trial court. It was this concrete evidence of incompetence that complicated the respondent's burden, not the mere incantation of the phrase "Alzheimer's dementia" without any connection to the testatrix's condition at the time in question.

Neither are we persuaded by the respondent's argument that the current evidentiary burden imposes a hardship on attorneys who seek to ensure the valid execution of older clients' wills. We have long held attorneys owe a duty of reasonable care to their clients, and more recently have recognized such a duty toward intended will beneficiaries. *Simpson v. Calivas*, 139 N.H. 1, 7, 650 A.2d 318, 323 (1994). We assume attorneys in this State have taken appropriate steps to discharge this duty in the past and will continue to do so in the future. To suggest that refusal to shift our burden of proof veritably mandates neurological exams for those seeking to make a will presupposes rebuttal of the presumption of competency which

protects testators. It also advocates changing a time-tested, general evidentiary rule based on a limited number of potential cases where circumstances may make the will proponent's burden more difficult.

In short, we see no reason to alter our prevailing evidentiary standard in will contest cases. The order of the probate court is therefore affirmed.

*Affirmed.*

All concurred.