NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

10th Circuit Court-Brentwood Probate Division
Case No. 2023-0389
Citation: In re Estate of Colanton, 2024 N.H. 43


IN RE ESTATE OF BARBARA E. COLANTON

GAIL ANDERSEN

v.

BRENDA GRANT

Argued: April 23, 2024
Opinion Issued: August 14, 2024

Devine, Millimet & Branch, PA, of Manchester (David P. Eby, Marrielle Van Rossum, and Richard P. Driscoll on the brief, and Richard P. Driscoll orally), for the petitioner.

McLane Middleton Professional Association, of Woburn, Massachusetts (Adam M. Hamel on the brief and orally), for the respondent.

COUNTWAY, J.

[¶1] The petitioner, Gail Andersen, appeals a decision of the Circuit Court (Weaver, J.) rejecting her challenges to a will and trust executed by her mother,

Barbara Colanton.  The respondent, Brenda Grant, is also a daughter of Colanton and is the executrix of Colanton's will.  We affirm.

[¶2] The trial court found the following facts.  Andersen and Grant are the only children of Colanton and her husband, Frank Colanton.  The Colantons owned and operated two golf courses, one of which they eventually sold, at which both Andersen and Grant worked during the 1990s.  Following their father's death in 2000, Andersen and Grant had a falling out.

[¶3] Colanton first established an estate plan with her husband in the 1990s and created the Barbara E. Colanton Trust (Trust) in 1994.  In 1999, she created the Colanton Real Estate Trust (Real Estate Trust), which held the property on which the golf course was located.  After her husband's death, Colanton revised her estate plan, including executing a new will and a restatement to the Trust in 2001.  In general, those documents provided for Andersen and Grant equally and also made provision for Colanton's grandchildren — Andersen's three children and Grant's only child — in equal shares.  Another amendment to the trust in 2002 altered the disposition as between Colanton's children and grandchildren, but still generally treated the members of each class equally.

[¶4] In 2015, Colanton, then 83 years old, revised her estate plan again.  At issue here are the following changes recited by the trial court:

> [Colanton] signed a new will on September 11, 2015.  The Will devises her entire estate to the Trust, and if the Trust no longer exists, then to Brenda Grant.  It specifically omits Gail Andersen.  At the same time, she signed an amendment to the Trust providing that Brenda would receive 90% of the assets in the Trust, and Gail would receive only 10%.  The grandchildren were not provided for in the new estate plan.  The Real Estate Trust was not modified.

[¶5] Colanton passed away in 2021 at the age of 88.  Grant filed the will and petition for estate administration with the court.  Andersen filed a motion in the probate case to re-examine the probate of the will.  She also filed a petition in equity challenging the 2015 Trust amendment and seeking an accounting for the Trust.  In both pleadings, Andersen alleged that at the time the 2015 will and Trust amendment were executed, Colanton was suffering from significant cognitive impairments and Grant exercised undue influence over her.  The cases were consolidated and tried together.

[¶6] Following a six-day hearing, the trial court issued a final order.  It found that "Colanton had the legal capacity to execute the Will and the remainder of her estate planning documents."  It further found that Grant was in a fiduciary or confidential relationship with Colanton and, "as a result, . . . ha[d] the burden to show a lack of undue influence on her."  In determining

the quantum of proof necessary to meet Grant's burden, the court noted that New Hampshire law was "not clear." It ultimately concluded that the preponderance of the evidence standard, rather than the clear and convincing evidence standard, should be applied. The court observed that the burden of proof as to testamentary capacity, once the presumption of capacity is rebutted, is preponderance of the evidence. It then reasoned that "[a]lthough the law regarding the determination of capacity is slightly different from that of undue influence, . . . the two are similar enough to support the use of the preponderance of the evidence standard" in this case.[1]   Applying that standard, the court found that Grant met her burden to show that she did not exercise undue influence on Colanton in order to obtain her increased share of Colanton's estate. Nevertheless, recognizing that the case might be appealed and seeking to avoid "a second trial . . . should the Supreme Court determine that [the court] should have applied the clear and convincing [evidence] standard," it further found that Grant "did not meet her burden of proof by clear and convincing evidence."

[¶7] The sole question before us is whether the trial court erred in applying the preponderance of the evidence standard, instead of the clear and convincing evidence standard, in determining that Grant did not exercise undue influence over Colanton. Accordingly, our review is de novo. See, e.g., American Pepper Supply Co. v. Fed. Ins. Co., 93 P.3d 507, 509, 511 (Ariz. 2004) (stating "[t]he appropriate burden of proof is a question of law, which this court reviews de novo" and concluding that trial court erred by instructing jury that defendant had to prove its defense by clear and convincing evidence rather than by a preponderance of the evidence); cf. Attorney General, Dir. of Charitable Trusts v. Loreto Publ'ns, 169 N.H. 68, 76 (2016) ("We review the allocation of the burden of proof, a question of law, de novo." (quotation omitted)).

[¶8] Andersen argues that "the trial court erred in failing to require [Grant] to rebut the presumption of undue influence by clear and convincing evidence." Grant counters that, under New Hampshire law, "the existence of a fiduciary or confidential relationship merely gives rise to an inference and not a presumption, of undue influence." Grant correctly states our law: "Inferences of fact may be drawn against a confidential agent" who procures the preparation of a will under which he substantially benefits, "but there is no presumption of law against the agent." Patten v. Cilley, 67 N.H. 520, 521 (preface to opinion), 528-29 (1893).

---

[1] Although Andersen argues that the trial court erred in finding the doctrines of undue influence and testamentary capacity sufficiently similar to apply the same quantum of proof to both, neither she nor Grant challenges the court's reliance on our law of wills to determine the quantum of proof applicable to the Trust as well as the will. Indeed, as both parties rely on our law of wills with regard to both instruments, we do the same.

[¶9] Initially, "the law presumes the absence of undue influence upon proof of the voluntary, formal execution of the will by a competent testator." Albee v. Osgood, 79 N.H. 89, 91 (1918). We explained the operation of the factual presumptions in favor of a will's proponent, and the applicable burdens of production and persuasion, in Gaffney v. Coffey, 81 N.H. 300 (1924):

> The proponent of the will had the burden of proving its due execution, voluntarily, by a competent testator. Upon proof of the voluntary formal execution of the will by a competent testator, in the absence of circumstances arousing suspicion, the proponent of a will is not required to offer express affirmative proof of the absence of undue influence. The presumption of fact, which excuses such offer of proof, however, neither extinguishes the original issue nor shifts the burden of proof to the contestant. It simply suspends the requirement of further proof of the voluntary character of the testator's act until it is called in question, if at all, by the submission of substantial evidence of undue influence by the contestant. When, as in this case, the appellant has supported her contention by the submission of such substantial evidence as will support a finding of undue influence, the presumption of fact created by the formal proof of the will has performed its office and is no longer of controlling force or of probative value. Under these circumstances, if the jury should find upon a consideration of the conflicting testimony upon this issue that a condition of even balance of the evidence has been reached, the proponent of the will has failed to maintain the ultimate burden of proof which is his from the beginning to the end of the trial. In other words, he has failed to establish that the will is the free and voluntary act of the testatrix.

Gaffney, 81 N.H. at 306-07 (citation omitted); see also Ross v. Carlino, 119 N.H. 126, 130 (1979) (noting that a will's proponent "has the ultimate burden of proof as to every fact which is necessary to the validity of a will" and "retains the burden of persuasion throughout the probate proceeding"; nevertheless, once the proponent establishes his prima facie case, the contestant "suffers a shift in the burden of moving forward with evidence showing a failure of due execution").

[¶10] As the foregoing demonstrates, submission of "substantial evidence" of undue influence by the will's contestant merely puts the will's proponent to her burden of proving the "voluntary character of the testator's act," which burden had previously been suspended by the "presumption of fact created by the formal proof of the will." Gaffney, 81 N.H. at 306-07. Thus, submission of "substantial evidence" of undue influence has the same effect — that is, putting the will's proponent to her burden of proof — as submission of sufficient evidence that the testator lacked testamentary capacity. See In re

Estate of Washburn, 141 N.H. 658, 662–63 (1997) (noting "the burden of proving testamentary capacity in will contests remains on the proponent of the will throughout the proceeding," but because of the "presumption of capacity," the "proponent need not introduce any evidence upon the issue of the testatrix's capacity until a will contestant first rebuts the presumption by offering evidence of incapacity"). Accordingly, the trial court was correct to equate the proponent's burden of proof as to testamentary capacity after a contestant has rebutted the presumption of capacity with the proponent's burden of proof as to the absence of undue influence after a contestant has rebutted the presumption of voluntary execution. See Gaffney, 81 N.H. at 306 (noting that a will's proponent has the burden of proving the will was duly executed both "voluntarily" and "by a competent testator").

[¶11] Andersen nevertheless argues that "[t]he policies underlying the doctrine of undue influence are not sufficiently similar to the rationale underlying the need for legal capacity." (Italics omitted.) We are not persuaded. We have defined undue influence in the context of a challenge to a will as the "use of such appliances and influences as take away the free will of the testator, and substitute another's will for his, so that in fact the instrument is not the expression of the wishes of the testator in the disposition of the property, but of the wishes of another." Albee, 79 N.H. at 92 (quotation omitted). Similarly, one of the principles underlying the requirement of testamentary capacity is "that a will should be given effect only if it represents the testator's true desires." Jesse Dukeminier & Stanley M. Johanson, Wills, Trusts and Estates 147 (5th ed. 1995). Indeed, the standard for testamentary capacity under New Hampshire law reflects that this requirement is aimed at ensuring that the will represents the testator's true wishes:

> In order to have sufficient mental capacity to make the will, the testatrix, at the time of making it, must have been able to understand the nature of the act she was doing, to recollect the property she wished to dispose of and understand its general nature, to bear in mind those who were then her nearest relatives as such, and to make an election upon whom and how she would bestow the property by her will; that she must have had the ability, the mental power or capacity to do this; that if she had, the law regarded her as of sufficient mental capacity to make the will . . . .

In re Estate of Washburn, 141 N.H. at 661 (quotation and brackets omitted). Accordingly, while the policies underlying the doctrine of undue influence and the requirement of testamentary capacity are not coextensive, we conclude the trial court did not err in finding them "similar enough" that the same quantum of proof should apply.

[¶12] With respect to testamentary capacity, we have held that "once the presumption [of capacity] is rebutted, the proponent merely retains the initial

5

burden of proving due execution.  The proponent must persuade the trial court, by a preponderance of all the evidence presented, that the testatrix possessed the requisite capacity to make the will."  Id. at 663.  Similarly, once the initial presumption of voluntary execution is rebutted by substantial evidence of undue influence, the will's proponent, retaining the initial burden of due execution, must persuade the trial court, by a preponderance of the evidence, that the will was executed voluntarily.  See id.; Gaffney, 81 N.H. at 306.

[¶13] No different procedure applies when the "substantial evidence" of undue influence comprises an inference drawn from evidence that the beneficiary was in a confidential or fiduciary relationship with the testator.

> The fact that an inference unfavorable to the validity of a will, which may be drawn when it appears that a person who was dependent upon or subject to the control of another makes a will in that other's favor, may be rebutted by showing that the transaction was fair and honest, does not change the question of whether or not it has been rebutted from one of fact to one of law.

Edgerly v. Edgerly, 73 N.H. 407, 408 (1905) (citations omitted); see also Archer v. Dow, 126 N.H. 24, 28 (1985) (holding that the beneficiary of a transfer by deed who holds a position of trust and confidence with the transferor has the burden of proving an absence of undue influence).  Accordingly, to the extent Andersen contends that the procedure described in Gaffney does not apply when the will's proponent is a beneficiary who had a confidential or fiduciary relationship with the testator, we reject that argument.

[¶14] Andersen further argues that "[i]n light of the concerns underlying th[e] presumption [of undue influence arising when a beneficiary is in a confidential relationship with the testator], it is reasonable to require strong evidence to destroy it."  She contends that "[t]his court can best advance the common-law goal of protecting vulnerable donors and testators by requiring those with whom they had a confidential relationship to prove by clear and convincing evidence that their wills and trusts were made without undue influence."

[¶15] We are not persuaded.  Although protecting vulnerable donors and testators from those who would exercise undue influence over them is a legitimate goal, imposing a high burden of proof on the proponent of a will or trust creates a significant risk that a decedent's true intention will be defeated.  We agree with Grant that the preponderance of the evidence standard strikes the best balance between respecting the decedent's wishes as stated in the instrument while protecting against potential overreaching by those closest to the decedent.  Adequate protection for vulnerable testators is embedded in the mechanism described above in which the initial presumption of voluntary

execution ceases to function and the will's proponent is put to her proof; a heightened quantum of proof is not required for that purpose and risks defeating the testator's true intent.

[¶16] Finally, Andersen cites case law from other jurisdictions, observing that there is a split among states regarding the quantum of proof needed to rebut the presumption of undue influence. To the extent she suggests we should follow those jurisdictions that require proof by clear and convincing evidence, we decline. For the reasons stated herein, we conclude that the trial court did not err in applying the preponderance of the evidence standard. Given the policy considerations at issue, however, we note that if the legislature disagrees with our decision, it can establish a different burden of proof by legislative enactment. See State v. Carter, 167 N.H. 161, 170 (2014) (noting that "the legislature possesses the power to enact laws that override this court's common law and statutory construction precedents").

Affirmed.

MACDONALD, C.J., and BASSETT and DONOVAN, JJ., concurred; HANTZ MARCONI, J., sat for oral argument but did not participate in the final vote.

7