Merrimack,
Nov. 6, 1918.

## LOIS H. ALBEE, *Ex'x, v.* ROBERT C. OSGOOD, *Ap't.*

Upon proof of the voluntary formal execution of a will by a competent testator, the law presumes the absence of undue influence, and in the absence of suspicious circumstances the proponent of the will is not required to offer affirmative proof of the absence of undue influence.

A testator may properly receive the advice and opinions of others, and, though influenced thereby, there is no undue influence, if he is not controlled to the extent of yielding his own judgment or will.

APPEAL, from a decree of the probate court admitting to probate the will of Charles F. Osgood. The issues raised were tried by jury. Upon the plaintiff's motion for a verdict at the close of the evidence, the due execution of the will and the competency of the testator were admitted by the appellant. Subject to the plaintiff's exception, her motion was denied and the issue, whether the will was procured by her undue influence or that of her husband, was submitted to the jury. After a verdict for the appellant upon this issue, the plaintiff moved that the verdict be set aside because unwarranted by the evidence, and because against the weight of the evidence. The motion was denied, the court making a finding that in this case the appearance of the executrix and her husband may properly have had unusual weight with the jury. The plaintiff excepted to the denial of the motion and to the finding made by the court. The will was executed February 17, 1916, and was drawn by a member of the bar from instructions given him by the testator which were identical with those given by the testator the day before to another member of the bar, who was prevented by illness from completing the draft and attending to the execution of the will. The testator and his counsel consulted in private and neither the plaintiff nor her husband was present at its execution.

The testator, Charles F. Osgood, was about sixty-five years of age, a widower without children. His next of kin were children of a deceased brother. His wife died in 1906. He owned tenement property in Concord appraised at $5,900 and personalty amounting to $1,243.90. His only business in recent years had been the care of his tenements and the collection of his rents, to which he attended until a few days before his death. After his wife's death he employed a housekeeper who also cared for him in his sickness, except that some assistance was given by the district nurse and after the latter part of January

other nurses were employed. He was ill with rheumatism in September, 1914. Christmas day, 1915, he had a severe chill and from that time was confined to his bed suffering pain and much discomfort from rheumatism and inflammation of the bladder and grew weaker until he died February 26, 1916. He was an intelligent, strong-minded, rather obstinate man; and he read the newspapers or had them read to him until within a few days of his death. He was on friendly but not intimate terms with his nephews and niece and thought highly of them. There was evidence of their prosperity and success in life. He had known the plaintiff many years. Both before and since his wife's death the families were intimate. The plaintiff's husband frequently took him out in his automobile. After he became confined to his bed Dr. Albee called daily at his house and did the errands of the family. He also brought him drinking water from a spring outside the city. Some time in December or January Mr. Osgood remarked he was going to make a will. Mrs. Albee then said: "You won't have to give your relatives anything." Saturday, February 12, 1916, Dr. Albee, after spending fifteen or twenty minutes with Mr. Osgood, said to the housekeeper, "Mrs. Albee will be in to see Mr. Osgood the first of the week about writing a will, making a will," and "I want you to leave them alone; I think she can get him to write a will." The plaintiff called the next Tuesday, was with Mr. Osgood alone for about two hours and afterwards secured the attendance of the lawyers who drafted the will. The will gave $50 to each of his brother's children and the balance of the property to the plaintiff. After his wife died in 1906, Mr. Osgood in a conversation with his brother's widow said he hoped his silverware and furniture would remain in the family. The memorandum taken by counsel for the draft of the will contains the following: "Five children of Herbert, $50 each. All rest to Mrs. E. H. Albee — Lois I think her name is — because she and her husband have taken care of me and did everything for me for 20 years." Transferred by *Branch*, J., from the October term, 1917, of the superior court.

*Harry J. Brown* and *A. Chester Clark* (*Mr. Brown* orally), for the appellant.

*Martin & Howe* (*Mr. Howe* orally), for the executrix.

PARSONS, C. J. The plaintiff as the proponent of the will had the burden of proving its due execution, voluntarily, by a competent

testator; in short, that the paper offered for probate was a will. *Patten* v. *Cilley*, 67 N. H. 520; *Judge of Probate* v. *Stone*, 44 N. H. 593, 605. "One point, however, is beyond dispute, and that is, that where once it has been proved that a will has been executed with due solemnities by a person of competent understanding, and apparently a free agent, the burthen of proving that it was executed under undue influence is on the party who alleges it. Undue influence cannot be presumed." Lord Cranworth, *Boyse* v. *Rossborough*, 6 H. L. Cas. 2, 49; *Baldwin* v. *Parker*, 99 Mass. 79, 87. Although the authorities are not in entire agreement as to where the burden of proof on the issue of undue influence lies, whether with the proponent of the will or the allegator of undue influence, all agree that the law presumes the absence of undue influence upon proof of the voluntary, formal execution of the will by a competent testator and that, in the absence of circumstances arousing suspicion, the proponent of the will is not required to offer express affirmative proof of the absence of undue influence. *In re Barney's Will*, 70 Vt. 352, 370. There is no presumption of law or fact that a will was produced by undue influence. *State* v. *Hodge*, 50 N. H. 510; *Carpenter* v. *Hatch*, 64 N. H. 573, 577. Assuming the burden to be on the plaintiff to establish the absence of undue influence, having offered evidence from which the law authorizes that presumption, a verdict should be ordered for her in the absence of evidence from which a contrary inference might be drawn. *Arnold* v. *Prout*, 51 N. H. 587; *State* v. *Harrington*, 69 N. H. 496. Whether a contestant raising the issue of undue influence is entitled to a verdict, if the evidence offered by him merely balances but does not overcome the inferences from the formal proof, may be a technical question of some practical importance but it does not arise in this case. The plaintiff, having opened the case and presented evidence sufficient to establish the questions involved, was entitled to a verdict unless the evidence offered by her was impeached or answered by evidence subsequently introduced. This court is not generally concerned with the weight of evidence, hence the question is not how much evidence there was but was there any. It is conceded no evidence was offered which would authorize a finding of lack of due execution or want of competency in the testator, and that the verdict on those issues should be for the proponent. In the same way, if no evidence that the will was caused by undue influence was offered, a verdict on this issue also should have been directed for the plaintiff.

Undue influence which will avoid a will is defined in the charge to the jury reported in *Whitman* v. *Morey*, 63 N. H. 448, 453, which so far

as then in issue was approved in that case and is abundantly sustained by the authorities. 1 Jar. Wills (5th Am. ed.) *p.* 131, note E; *Small* v. *Small,* 4 Greenl. 220; s. c. 16 Am. Dec. 257, note; *Conley* v. *Nailor,* 118 U. S. 127, 135. *Mackall* v. *Mackall,* 135 U. S. 167, 172. It was there said of undue influence which will avoid a will "It is the use of such appliances and influences as take away the free will of the testator, and substitute another's will for his, so that in fact the instrument is not the expression of the wishes of the testator in the disposition of the property, but of the wishes of another. But where no fraud or deception is practised, mere persuasion will not invalidate a will on the ground of undue influence. On the contrary, a testator may properly receive the advice, opinions, and arguments of others, and if, after all such advice, opinions, and arguments, the testator is not controlled by them to the extent of surrendering his free agency and yielding his own judgment or will, then there is no such undue influence as is required to be proved to avoid the will. To vitiate or render void a will by reason of undue influence, the influence must amount to force and coercion, destroying free agency, and not merely the influence of affection, or merely the desire of gratifying another; but it must appear that the will was obtained by this coercion, — by importunity that could not be resisted; that it was made merely for the sake of peace, so that the motive was equivalent to force and fear."

It is plain the record contains no evidence of undue influence as above defined. The contestant does not controvert the plaintiff's evidence of the free and uncontrolled action of the testator in the direction and execution of the will but relies on the statement of the plaintiff's husband that he thought the plaintiff could get the testator to make a will and her subsequent interview with him and the friendly relations of the parties. The evidence may disclose opportunity but opportunity and accomplishment are not identical or proved by the same evidence. The relations between the families, and the neighborly services performed for the testator tended to explain the will. The care and attention bestowed on Mr. Osgood by the plaintiff and her husband may have influenced him to make his will as he did. There is evidence it did, but there is no evidence that they deceived him or compelled his action by excessive importunity. However intimate the families may have been, they did not live together. The testator maintained an independent household and was personally cared for by attendants directed and paid by him. There was no evidence of intimate physical or mental association. The will

interrupted the operation of the statute of descents: such is usually the purpose of a will. While the testator's relations with his legal heirs were friendly and he thought highly of them there is no evidence they were in any way dependent upon him, or of any moral obligation on his part to permit his property to descend to them.

The evidence tending to show the testator did not wish his property to go to his heirs and why, is not important here. The jury might not believe it. There was no evidence of an intention to die intestate. The evidence of a contrary intention merely emphasizes the absence of evidence material here. Some time previous to making the will the plaintiff told the testator he was not obliged to remember his relatives in making the will. Such is the law. Furthermore the testator was not controlled by the statement because he did remember them in the will. There was evidence that some ten years before, Mr. Osgood expressed to his brother's widow a hope or wish that his household furniture and silver should not go out of the family. This is evidence of a purpose contrary to that expressed in the will, but the inference that a change of purpose after such a lapse of time was not freely made would be conjecture merely.

The appellant in support of his contention that there was evidence of undue influence relies upon *Edgerly* v. *Edgerly*, 73 N. H. 407. In that case it was said, "Unless there was evidence tending to sustain the validity of the will, a verdict should have been directed for the defendants. . . . If there was evidence tending to sustain the validity of the will, and also evidence tending to prove that it was procured by undue influence, that issue should have been submitted to the jury." *p.* 408.

The plaintiff's evidence of the voluntary execution of the will by a competent testator tended to sustain its validity. The sole question therefore is, was there any substantial evidence tending to prove undue influence? In the circumstances proved in *Edgerly* v. *Edgerly* such evidence was found. But the present case is clearly distinguishable therefrom. In that case there was evidence that the plaintiff, against whom undue influence was charged, was the confidential adviser of the testatrix in respect to all her business affairs; that her condition, mental and physical, was such that she was practically incapable of forming new ideas and could be easily influenced by the plaintiff; that she had an intention of dying intestate but the plaintiff, anxious to have her make a will in his favor and knowing her condition, took her to a scrivener and remained with her while she executed a will in his favor. The inferences which might be drawn

from these facts were held to constitute evidence of undue influence in the making of the will.

In the instant case there is no evidence the plaintiff or her husband advised the testator as to his business or had charge of it. Though enfeebled from physical suffering he managed his own affairs up to the time of his death; there is no evidence he was under anyone's control; he had earlier declared an intention of making a will and consequently did not have an intention of dying intestate; there was no evidence the plaintiff had ever influenced the testator; neither she or her husband were present when the will was drawn. None of the conditions relied on as furnishing evidence for the jury in *Edgerly* v. *Edgerly* are in evidence here. The case is much stronger for the proponent of the will than *Page* v. *Bilbruck*, 69 N. H. 664, in which a finding of undue influence was set aside. See 193 Briefs and Cases, *pp.* 41–205. After the close of the plaintiff's *prima facie* case the appellant called the plaintiff and her husband as witnesses. The trial judge has incorporated in the record a statement that "the appearance of the executrix and her husband on the stand may properly have had unusual weight with the jury." As the verdict was against the executrix the statement is understood to intend that the jury were probably unfavorably impressed. The credibility of witnesses is for the jury. Upon that issue their appearance is evidence.

Substantially all the evidence as to the relations between the testator and the plaintiff and her husband is found in their testimony. If the jury refused them any credit, disbelieved their statements entirely, the case is as if they were not called to the stand. Absence of evidence because of the untrustworthy character of the testimony offered would be as fatal to the defendant's answer to the plaintiff's *prima facie* case as the failure to call witnesses. Belief or disbelief of the witnesses called in support of or in opposition to the will was the jury's province, but the power of disposing of his property by will was a part of the testator's property right guaranteed him by statute. *Thompson* v. *Kidder*, 74 N. H. 89, 94; P. S., *c.* 186, *s.* 1. He is not deprived of that power because of a jury's prejudices against the subjects of his bounty. The jury might disbelieve their testimony if satisfied of its falsity, but the testator's gift is not destroyed because the jury think the beneficiaries unworthy of belief or morally defective. The question before this court does not appear to be affected by the finding reported. No evidence having been offered to justify the inference that the testator was misled or coerced into making the will as it was made, the only reasonable conclusion from the evidence

is that the paper presented represents his purpose and is his will. A verdict should have been directed for the plaintiff and the decree of the probate court affirmed.

*Decree for the plaintiff.*

All concurred.