Carroll
No. 2001-419

JEFFREY AND SUSAN MACDONALD

v.

B.M.D. GOLF ASSOCIATES, INC., d/b/a INDIAN MOUND GOLF CLUB

Argued: October 16, 2002
Opinion Issued: November 27, 2002

*McLane, Graf, Raulerson & Middleton, P.A.*, of Manchester (*Bruce W. Felmly* and *Bryce A. Larrabee* on the brief, and *Mr. Felmly* orally), for the plaintiffs.

*Desmarais, Ewing & Johnston, P.L.L.C.*, of Manchester (*Scott A. Ewing* and *Heather G. Silverstein* on the brief, and *Mr. Ewing* orally), for the defendant.

DALIANIS, J. The plaintiffs, Jeffrey and Susan MacDonald, appeal from a jury verdict denying recovery for Jeffrey's injuries sustained at a golf course owned by the defendant, B.M.D. Golf Associates, Inc. On appeal, the plaintiffs argue that the Trial Court (*O'Neill*, J.) erred by: (1) denying them the opportunity to impeach witnesses using subsequent remedial

measure evidence; and (2) improperly admitting hearsay evidence. We reverse and remand.

The relevant facts follow. Jeffrey was injured while riding in a golf cart at the defendant's Indian Mound Golf Club. His golf party consisted of his brother-in-law and two adolescent nephews, Brett and Jeff McCormack. Prior to their round, Brett insisted the group rent golf carts. As Jeffrey and Brett were riding in their cart, they approached a fork in the cart path. They mistakenly went right at the fork rather than left. When the driver realized the mistake, he attempted to turn back to the left, causing the cart to overturn. As Jeffrey jumped out of the cart, the roof of the cart struck and injured his ankle.

Within minutes of the accident, John Murphy, a member of the club, arrived at the scene and saw Jeffrey injured on the ground and Brett trembling nearby. Murphy asked Brett if he was okay, and a few seconds later he responded, "I wasn't supposed to be driving [the cart.]"

After the accident, the defendant posted signs near the accident scene warning of the sharp turn and directing golfers to turn to the left.

Prior to trial, the plaintiffs filed a motion *in limine* to exclude testimony from Murphy about Brett's statement, claiming the statement was inadmissible hearsay. *See* N.H. R. Ev. 802. The trial court disagreed, finding that the statement was admissible under the "excited utterance" exception to the hearsay rule. *See* N.H. R. Ev. 803(2).

Also prior to trial, the parties agreed that evidence relating to the signs placed near the accident scene was inadmissible as subsequent remedial measure evidence, unless testimony at trial made it admissible to impeach or prove feasibility or control. *See* N.H. R. Ev. 407. During the testimony of two witnesses, the court denied the plaintiffs' request to impeach each witness using the evidence. This appeal followed.

We will not reverse a trial court's ruling on the admissibility of evidence absent an unsustainable exercise of discretion. *In re Antonio W.*, 147 N.H. 408, 414 (2002). To show an unsustainable exercise of discretion, the plaintiffs must demonstrate that the court's ruling was clearly untenable or unreasonable to the prejudice of their case. *See State v. Lambert*, 147 N.H. 295, 296 (2001).

The plaintiffs argue that Brett's statement was not an excited utterance and was therefore inadmissible hearsay. The defendant contends that this issue was not preserved because the plaintiffs failed to contemporaneously object to Murphy's testimony during trial. Assuming without deciding that this issue was preserved, we disagree with the plaintiffs that the statement was not an excited utterance.

An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." N.H. R. Ev. 803(2). For hearsay to be admitted as an excited utterance, "it must appear to the satisfaction of the presiding justice that the utterance was a spontaneous verbal reaction to some startling or shocking event, made at a time when the speaker was still in a state of nervous excitement produced by that event and before he had time to contrive or misrepresent." *State v. Hudson*, 121 N.H. 6, 11 (1981) (quotations omitted). "While it is true that contemporaneity is a factor to be considered in determining the admissibility of such statements, it is by no means controlling, and such things as the nature of the event, the victim's state of mind, and all other circumstances are important considerations." *Simpson v. Wal-Mart Stores*, 144 N.H. 571, 575 (1999) (quotations omitted).

The record supports the trial court's finding that Brett's statement was an excited utterance. We are not convinced by the plaintiffs' argument that too much time had passed between the accident and Brett's statement for him to have been under the stress of the event. The timing of the statement is only a factor to be considered and strict contemporaneity is not required. Murphy arrived at the scene within minutes of the accident. At the time, Brett was trembling, which indicated that he was still upset from experiencing the accident first hand. Nor are we persuaded by the plaintiffs' claim that Brett's statement could not have been spontaneous because it was made in response to Murphy's question. That the declarant may have been responding to a question does not prevent his statement from being spontaneous. *See State v. Lesnick*, 141 N.H. 121, 128 (1996). While Murphy asked Brett if he was okay, Brett responded by explaining who was driving the cart, which indicated that his statement was spontaneous rather than prompted by Murphy's question. Under these circumstances, the trial court acted within its discretion in admitting the statement.

The plaintiffs next argue that the trial court erred in excluding evidence of subsequent remedial measures to impeach the testimony of the defendant's witness, Gerald McDonald, and their own witness, Paul Power. Under New Hampshire Rule of Evidence 407, evidence of subsequent remedial measures is inadmissible "to prove negligence or culpable conduct in connection with the event, [but is admissible] when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment." N.H. R. Ev. 407. We have observed that courts must be careful not to allow this

exception to swallow the general rule since any evidence of subsequent remedial measures might be thought to contradict and so in a sense impeach a party's testimony. *Keating v. United Instruments*, 144 N.H. 393, 396 (1999). Thus, subsequent remedial measure evidence is not admissible to rebut a claim that the conditions prior to the accident were not dangerous. *See Cyr v. J.I. Case Co.*, 139 N.H. 193, 207 (1994). However, we have recognized that impeachment is proper where a party asserts that the subsequent remedial measures would interfere with safety, or that the conditions prior to the accident were the safest they could have been. *See id.*

The plaintiffs argue that the following testimony of McDonald was impeachable using the subsequent remedial measures evidence:

Q: Are you telling me this is a safe situation that doesn't require any signs or warnings to people because it's a perfectly safe situation?

A: Experience over the years up to this accident has shown us that it was a safe area, or is a safe area.

Q: And [it] still remains a safe area?

A: Yes

. . . .

Q: . . . the turn to the left is not readily visible to the operator of the cart, is it?

A: I have to beg to differ with you, sir. I mean, there's been a hundred thousand carts over that area prior to [Jeffrey's] accident, and none of them tipped over. So, obviously, they can see the path.

. . . .

Q: How many of them make the right turn and start down here and realize they have got to back up and go around because they made the wrong choice?

A: I've never heard of anybody making a right turn. I'm sure people have, but it's never been reported to me that that's a problem.

As this testimony shows, McDonald asserted only that prior to the accident he had no reason to believe that the cart path where the accident

occurred was unsafe. We fail to see how the evidence of subsequent remedial measures would impeach this testimony. The evidence of signs being placed near the accident scene merely indicates that the defendant reconsidered the safety of the area after the accident and in no way shows that McDonald did not, in fact, believe that the area was safe prior to the accident. Therefore, the trial court acted within its discretion in excluding the evidence.

On the other hand, Power testified that signs "are not practical" and they "create[] a lot of chaos." At oral argument, the defendant conceded that these portions of Power's testimony would have been properly impeached with the subsequent remedial measure evidence had he been a defense witness. However, the defendant argues that the plaintiffs were properly precluded from impeaching Power because he was a witness for the plaintiffs.

While a party may impeach the party's own witness for any reason, see N.H. R. Ev. 607, a party may not use impeachment as a mere subterfuge to admit otherwise inadmissible evidence. See State v. Soldi, 145 N.H. 571, 574 (2000). The defendant argues that the plaintiffs purposely called Power to admit the otherwise inadmissible evidence and used leading questions to elicit the testimony. We disagree. At the time of both the accident and the implementation of the subsequent remedial measures, Power was the defendant's course superintendent, whose responsibilities included the safety of the course. The plaintiffs questioned Power about the location of the accident, safety of cart paths, and the signage throughout the course. Nothing in the record indicates that the plaintiffs tailored their questioning in order to elicit impeachable testimony. Rather, Power volunteered his testimony in response to questions about the safety of the cart path at the accident scene. Accordingly, the trial court erred by not allowing the plaintiffs to impeach his testimony with the subsequent remedial measure evidence.

*Reversed and remanded.*

BROCK, C.J., and BRODERICK, NADEAU and DUGGAN, JJ., concurred.