Sullivan
No. 2001-756

LINDA MURRAY, BY HER CO-GUARDIANS CORNELIA BURLEIGH
AND MARY MURRAY & a.

v.

DEVELOPMENTAL SERVICES OF SULLIVAN COUNTY, INC.

Argued: January 15, 2003
Opinion Issued: March 17, 2003

*Conner Law Office*, of Lebanon (*William E. Conner* on the brief), and *Young Law Office*, of Claremont (*David A. Young* on the brief and orally), for the plaintiffs.

*Mallory & Friedman, PLLC*, of Concord (*Christine Friedman* on the brief and orally), for the defendant.

BRODERICK, J. The defendant, Developmental Services of Sullivan County, Inc., appeals from jury verdicts in the Superior Court (*Morrill*, J.) in favor of the plaintiffs, Linda Murray, Barry Murray, Merle Rhodes and Rick Hill. We affirm.

The plaintiffs are severely developmentally disabled adults who resided in group homes operated by the defendant. In 1998, the plaintiffs, through their guardians, filed suit against the defendant, alleging that they were physically and sexually assaulted by another developmentally disabled resident, "John Doe," while in the defendant's care. After a ten-day trial, held in October 2001, the jury returned verdicts in favor of all four plaintiffs. Following the trial, the defendant moved unsuccessfully for judgment notwithstanding the verdicts or, alternatively, for a new trial. This appeal followed.

On appeal, the defendant argues that the trial court erred by: (1) permitting the plaintiffs to amend their witness list at the final pre-trial conference and to call many of those witnesses at trial; (2) denying its motion for a mistrial based upon the plaintiffs' improper questioning of witnesses; (3) denying its request for a curative instruction after the plaintiffs asked the jury, in closing argument, to "send a message" with its verdicts; and (4) charging the jury on document destruction. We evaluate each argument in turn.

I

The defendant first argues that the trial court erred by allowing the plaintiffs to amend their witness list at the final pre-trial conference, two weeks before trial, and by allowing them to call many of those witnesses at trial. It contends that it was prejudiced because it could not depose the witnesses or attempt to exclude potentially harmful and inadmissible testimony in advance of trial.

At the final pre-trial conference, the plaintiffs submitted a final pre-trial statement containing a list of approximately seventy-five potential witnesses, most of whom had not been previously disclosed to the defendant. The defendant objected. In response, the plaintiffs asserted that the late disclosure of witnesses resulted from the defendant's failure to timely produce earlier requested discovery material. Defense counsel admitted that upon receipt of the plaintiffs' discovery request, she asked her client to comply instead of producing her own files which she had already organized. The plaintiffs alleged that numerous documents were missing from the discovery materials they received in April 2001, and that they spent a considerable amount of time reviewing the material to identify missing information. In September 2001, they met with defense counsel and photocopied approximately 6,000 documents that apparently had not been included in the material initially produced.

In allowing the witnesses to testify, the court stated:

> [T]he plaintiffs have regularly complained for the last year and a half about the inability to obtain information, information that was entirely within [the defendant's] control. . . . The plaintiffs have had an enormously difficult time acquiring the information with which to present their case. But their case, as it goes in, is exactly the way they have described it . . . for the last two years.

It further noted:

> None of these witnesses are giving expert testimony, none of them are giving particularly complicated testimony. The only

> testimony that they're giving is about an incident or a couple of factual incidents, all that is relatively simple testimony. They are all, uh, are or were employees of the defendants, available to you, their records were available to you . . . .

> . . . I think you have some obligation to, . . . mitigate any surprise that occurs. And I'm not sure that you've made the effort that I consider to be significant enough to argue for a continuance or a mistrial.

The court also admonished defense counsel for not producing the documents herself: "You should have produced what you had in April and we wouldn't be going through this now." The plaintiffs ultimately called thirty-two witnesses at trial. The court permitted defense counsel to interview the witnesses disclosed for the first time in the final pre-trial statement in advance of their testimony.

New Hampshire law favors liberal discovery. *Johnston v. Lynch*, 133 N.H. 79, 94 (1990). We have long recognized that justice is best served by a system that reduces surprise at trial by giving both parties the maximum amount of information. *Wong v. Ekberg*, 148 N.H. 369, 372 (2002). If a party is surprised by the introduction of evidence or the presentation of a witness previously unknown to it, the trier of fact is likely to be deprived of having both sides of an issue fully presented, and the system becomes less effective as a means of discovering the truth. *Scontsas v. Citizens Insurance Co.*, 109 N.H. 386, 388 (1969). Pre-trial discovery and the admissibility of evidence are generally within the discretion of the trial court, however, and we will uphold its rulings unless the exercise of its discretion is unsustainable. *Petition of Haines*, 148 N.H. 380, 381 (2002); *MacDonald v. B.M.D. Golf Assocs.*, 148 N.H. 582, 584 (2002). To meet this threshold, the defendant must demonstrate that the trial court's ruling was clearly untenable or unreasonable to the prejudice of its case. *Haines*, 148 N.H. at 381.

In this case, the cooperation shown by both sides was less than stellar. However, after a careful review of the record, we cannot say that the trial court's decision to allow the late listing of witnesses was an unsustainable exercise of discretion. The court noted that the witnesses were not offering complex testimony, that they were employees of the defendant and that the plaintiffs' case at the time of trial was the same as it had been for the preceding two years. Furthermore, the court found defense counsel at fault for the late disclosure of witnesses, noting that the plaintiffs had regularly complained about the difficulty they experienced in obtaining information from the defendant. Although the defendant makes

factual assertions which conflict with the trial court's finding on this issue, the assertions are not supported by the record. *See* SUP. CT. R. 13 (moving party is responsible for presenting a record sufficient to allow this court to decide the issue presented on appeal). Accordingly, on the record before us and given the broad discretion afforded the trial court in managing and supervising discovery and ruling on the conduct of the trial, we find no error.

## II

The defendant next argues that the plaintiffs' counsel engaged in a practice of repeatedly asking witnesses improper questions. It argues that the sheer number of objections created potential prejudice with the jury, which could not be cured by the word "sustained." The defendant also contends that the improper questioning elicited inadmissible and inflammatory testimony before the jury and, therefore, warranted a mistrial.

On the seventh day of trial, defense counsel moved for a mistrial on the basis that plaintiffs' counsel had improperly questioned two witnesses about events that the court, prior to trial, had ruled inadmissible. The court denied the motion, reasoning that its contemporaneous admonishments to the jury to disregard certain answers were sufficient. During the plaintiffs' questioning of these two witnesses, the court sustained nineteen objections by defense counsel and repeatedly warned plaintiffs' counsel to cease his efforts to introduce improper evidence. With regard to one inadmissible event, a witness testified to an incident in the summer of 1998 involving John Doe which caused her great concern. Defense counsel objected to the testimony. After sustaining the objection, the trial court asked defense counsel if she wanted the court to give an admonishment to the jury, which she declined.

The trial court should grant a party's motion for a mistrial only if it determines that justice may not be done if the trial continues to verdict. *LeBlanc v. American Honda Motor Co.*, 141 N.H. 579, 581 (1997). To justify a mistrial, remarks or conduct of counsel must be more than merely inadmissible or inappropriate; they must constitute an irreparable injustice that cannot be cured by jury instructions. *Id.* Because the trial court was in the best position to gauge prejudicial impact, it had broad discretion to determine whether a mistrial or other remedial action was necessary. *Id.* Remedial action includes, but is not limited to, curative jury instructions, which the jury is presumed to follow. *Id.* We will not overturn the trial court's decision absent an unsustainable exercise of discretion.

*State v. Boetti*, 142 N.H. 255, 261 (1997); *see State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard).

Although we are dismayed by the conduct of plaintiffs' counsel, we do not believe that the trial court's denial of a mistrial reflects an unsustainable exercise of discretion. The trial court sustained objections, immediately cautioned the jury about certain answers, and admonished plaintiffs' counsel for asking improper questions. For the most part, defense counsel objected before the witnesses made any inadmissible statements, and all that the jury heard regarding inadmissible events was that an "incident" occurred in August 1998 which caused a witness "great concern." For these reasons, we do not believe that there was an irreparable injustice that was not cured by the court's jury instructions and contemporaneous admonishments.

### III

The defendant next contends that the trial court erred in not providing a curative instruction after the plaintiffs' counsel asked the jury, in closing argument, to "send a message" with its verdicts. The defendant argues that these comments improperly influenced the jury by asking it to consider the effect of its verdicts on thousands of non-parties and by inviting it to punish the defendant. The plaintiffs counter that the defendant did not make contemporaneous objections and thus did not preserve the issue for appeal. We assume, without deciding, that the issue is properly before us.

During closing argument, counsel for the plaintiffs remarked:

> You 12 people have the opportunity . . . to change everything for thousands of people in the State of New Hampshire for years to come so there is [*sic*] no more Rick's, Merle's, Barry's, and Linda's, or Robert's. . . .
>
> . . . .
>
> Ladies and gentlemen, I hope that the Linda's, the Barry's and the Rick's and the Merle's, again don't have to go through the ordeal that these individuals have had to go through to try to correct the process that will affect them for the rest of their lives.
>
> . . . .
>
> An award from this jury certainly can't give Merle and Rick and Linda and Barry memories free from this abuse, but it can send a message so very, very powerful that DSSC must and will

take steps to produce — to protect its consumers in the future. The message comes in the form of an award of money. . . .

. . . .

. . . Remember that a finding in favor of our clients will send a clear message to this organization — .

At this point, the defendant made an objection, which the trial court sustained. After counsel completed his closing argument, the defendant requested that the court instruct the jury that "[the verdict] is not to send a message." The court denied the request, stating that its jury instructions included a charge that "the verdict is not to punish the defendants." In its final instructions to the jury, the court stated, "The reason behind awarding a verdict to the plaintiff is not to punish the defendant for any wrongdoing, but to compensate the plaintiff for the injuries incurred as a result of the defendant's legal fault."

As the trial court is in the best position to gauge any prejudicial effect counsel's closing remarks may have had on the jury, we review the trial court's decision declining to give an instruction under an unsustainable exercise of discretion standard. *See State v. DeCosta*, 146 N.H. 405, 415 (2001); *Lambert*, 147 N.H. at 296. In assessing the effect of improper conduct by counsel, the trial court must examine, on a case-by-case basis, the totality of the circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, and the strength of the case (*e.g.*, whether it is a close case). *See LeBlanc*, 141 N.H. at 583.

█ Here, the challenged argument by plaintiffs' counsel was improper, and a separate, curative instruction would have been prudent. However, we are not persuaded that the trial court's decision not to give an immediate instruction was clearly untenable or unreasonable to the prejudice of the defendant's case. In its jury instructions, which immediately followed plaintiffs' closing argument, the court informed the jury of the plaintiffs' burden to prove that their injuries were caused by the defendant's legal fault and specifically admonished the jury that it should not award a verdict to punish the defendant.

## IV

Finally, the defendant challenges the trial court's jury instruction regarding document destruction, alleging that the proper basis for such an instruction was not established. The scope and wording of jury instructions are generally within the sound discretion of the trial court. *Fischer v.*

*Hooper*, 143 N.H. 585, 597 (1999). The test of the adequacy of any jury charge is whether, taken as a whole, it fairly presented the case in such a manner that no injustice was done to the legal rights of the litigants. *Id.*

Here, the trial court's instruction to the jury included the following charge:

> Evidence has been presented that certain records or documents may have been intentionally lost or destroyed by the defendant. The defendant denies that any records or documents were intentionally lost or destroyed, and to the extent that documents or records are missing, the defendant has presented evidence suggesting innocent explanations.
>
> If you find that those records or documents would have been relevant to this case, and that the defendant intentionally lost or destroyed them to keep the information secret, you may draw an unfavorable inference on account of there being missing documents or records. However, if you find there was an innocent explanation for the missing records or documents, or if you find these records or documents would not have been relevant to this case, you may not draw such an inference.

The defendant contends that since there was no evidence that documents were destroyed *after* the plaintiffs' claims were made, the plaintiffs were not entitled to this instruction. We construe its argument to be based upon the general rule that an adverse inference — that the missing evidence would have been unfavorable — can be drawn only when the evidence was destroyed deliberately with a fraudulent intent. *See Rodriguez v. Webb*, 141 N.H. 177, 180 (1996); 29 AM. JUR. 2D *Evidence* § 244 (1994). The timing of the document destruction is not dispositive on the issue of intent, however, and an adverse inference can be drawn even when the evidence is destroyed prior to a claim being made. *See Rodriguez*, 141 N.H. at 178, 180. Because the jury instruction here is consistent with this rule, we find the defendant's argument meritless.

*Affirmed.*

BROCK, C.J., and NADEAU and DUGGAN, JJ., concurred.