**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2017-0003, In re Estate of Carolyn R. Buskirk, the court on January 24, 2018, issued the following order:**

Having considered the briefs, the record submitted on appeal, and the oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case. The defendants, Edward Ota, Carla Ota, Maureen Lussier, Joseph Lapham, Linda Lapham, and Scott Noyes, appeal an order of the 3rd Circuit Court–Ossipee Probate Division (Patten, J.) granting the petition of the plaintiff, Ruth Buskirk (Ruth), for probate administration of the will of her sister, Carolyn R. Buskirk (Carolyn) dated December 21, 2011. We affirm.

I

Carolyn died on April 23, 2013, at age 72. In May 2013, Ruth petitioned for estate administration as the named executor in a will dated December 21, 2011, in which Carolyn identified herself as a resident of Charlotte, Florida. The 2011 will pours Carolyn's assets over into a trust whose sole beneficiary is Ruth.

In June 2013, Attorney Fay E. Melendy petitioned for estate administration as the named executor in a will dated June 30, 2010, in which Carolyn identified herself as a resident of Ossipee. The 2010 will distributes Carolyn's interest in her mother's home to Ruth, makes specific cash bequests totaling $55,000 to defendants Carla and Edward Ota, Joseph and Linda Lapham, and Maureen Lussier, and distributes the remainder to Ruth's three sons, including Noyes.

These competing petitions presented the necessity of proof of the 2011 will in solemn form. See RSA 552:7 (2007). Accordingly, a bench trial was held over five days between September 2015 and March 2016.

Based upon the evidence before it, the trial court determined that "the 2011 will has been proved and allowed for probate administration, duly executed, without undue influence, as the last will and testament" of Carolyn. The trial court stated that the 2011 will

> makes a disposition of Carolyn Buskirk's property to her sister, who is a natural object of Carolyn's bounty, particularly where Carolyn was not survived by any children of her own. The disposition is consistent with the agreement that the sisters had

between them years before to care for their mother, and then each other, when the bulk of the Buskirk family resources came to them equally.  The reciprocal wills and trust provisions are more consistent with the sisters['] intentions in the disposition of their family wealth than any others that came before, and inconsistent with the first element that must be proved in any undue influence determination, [that the will makes an unnatural disposition of one's assets].

Secondly, the evidence presented by those who had first-hand knowledge and experience with the sisters at and around the time of the execution of the 2011 will and estate planning documents done by both sisters support[s] a finding[ ] that Carolyn did not appear to have been unduly influenced by Ruth.  Although there were opportunities for Ruth to have exercised undue influence on Carolyn, it does not appear that Carolyn was susceptible to any such influence.  While Ruth may well have supported and discussed the necessity of maintaining the family wealth in the family name with Carolyn, Carolyn herself articulated the same goals independent of her sister and consistent with the testamentary plan she ultimately put into place.  Persuasion, arguments, advice and opinions of others do not themselves invalidate a will for undue influence.

II

"The findings of fact of the judge of probate are final unless they are so plainly erroneous that such findings could not be reasonably made."  RSA 567-A:4 (2007).  Accordingly, we will uphold the findings and rulings of the probate division unless unsupported by the evidence or clearly erroneous as a matter of law.  See In re Estate of Washburn, 141 N.H. 658, 659 (1997).  We accord considerable weight to the trial court's judgment on such issues as resolving conflicts in the testimony, measuring the credibility of witnesses, and determining the weight to be given evidence.  See id.; see also Echo Consulting Services v. North Conway Bank, 140 N.H. 566, 571 (1995).

On appeal, the defendants first argue that the trial court erred by holding Ruth to a preponderance of the evidence standard with respect to whether the 2011 will was the product of undue influence.  According to the defendants, we "should adopt the 'clear and convincing' quantum of proof for cases where, such as here, a fiduciary beneficiary has utilized her confidential relationship to create and design a situation where evidence of her undue influence at the time of the Will execution, and indeed the testator Carolyn herself, was hidden from the world — except where allowed by Ruth."  This argument, however, ignores the fact that the trial court specifically found that Ruth "has proven by a preponderance of the evidence, and indeed by clear and convincing evidence,

2

that the 2011 Will was prepared, discussed and executed by Carolyn absent undue influence." (Emphasis added.)

The defendants also argue that "no reasonable factfinder could have found that Ruth met her burden, even under a 'preponderance standard.'" (Capitalization and bolding omitted.)  To the extent that they intend this to be an argument that the evidence was insufficient to support the trial court's finding that the 2011 will was not the product of undue influence, we disagree.

Undue influence is the "use of such appliances and influences as take away the free will of the testator, and substitute another's will for his, so that in fact the instrument is not the expression of the wishes of the testator in the disposition of the property, but of the wishes of another."  Albee v. Osgood, 79 N.H. 89, 92 (1918) (quotation omitted).  "But where no fraud or deception is practised, mere persuasion will not invalidate a will on the ground of undue influence."  Id. (quotation omitted).  "On the contrary, a testator may properly receive the advice, opinions, and arguments of others, and if, after all such advice, opinions, and arguments, the testator is not controlled by them to the extent of surrendering his free agency and yielding his own judgment or will, then there is no such undue influence as is required to be proved to avoid the will."  Id. (quotation omitted).  The influence exerted must amount to "force and coercion, destroying free agency, and not merely the influence of affection, or merely the desire of gratifying another; but it must appear that the will was obtained by this coercion."  Bartlett v. McKay, 80 N.H. 574, 574-75 (1923) (quotation omitted).

Whether undue influence exists is a question of fact to be determined based upon the surrounding facts and circumstances.  In re Estate of Cass, 143 N.H. 57, 61 (1998).  The will proponent bears the burden of proof.  In re Estate of Fischer, 152 N.H. 669, 671 (2005).

We review sufficiency of the evidence claims as a matter of law and uphold the findings and rulings of the trial court unless they are lacking in evidentiary support or tainted by error of law.  Achille v. Achille, 167 N.H. 706, 715 (2015).  We view the evidence in the light most favorable to the plaintiff. See id. at 716.

Viewing the evidence in the light most favorable to the plaintiff, we conclude that it is sufficient to support the trial court's finding that Ruth proved by clear and convincing evidence that the 2011 will was not the product of undue influence.  In 2011, Ruth spent the summer with Carolyn at Carolyn's home in Ossipee, where Carolyn visited regularly with her local friends and Ruth hosted visitors in Carolyn's home.  During this time, they discovered that, in November 2010, during the time of a schizoaffective episode, Carolyn had added defendants Linda Lapham, Carla Ota, and Maureen Lussier as In Trust For (ITF) beneficiaries of Carolyn's bank accounts.  Upset by this discovery,

3

Carolyn removed the ITF beneficiaries and named Ruth and one of Carolyn's friends as co-signatories on her bank accounts. Nonetheless, there is no evidence that Ruth ever exercised any control over Carolyn's finances.

Thereafter, the sisters left New Hampshire for Florida to live together at Ruth's home. Upon arriving in Florida, they learned that an ex parte guardianship had been granted in New Hampshire as a result of a petition filed by defendant Edward Ota and another individual. Among other things, the temporary guardianship order restrained Ruth from having any contact with Carolyn.

The sisters consulted with Ruth's attorney, Rodney Salvati, regarding how to respond to the New Hampshire guardianship. Prior to meeting with them, Attorney Salvati arranged to have Carolyn examined by Dr. Nagarajan Devar, who conducted a "Mini-Mental State Examination" to establish Carolyn's cognitive status. Devar determined that Carolyn was competent to manage her own affairs.

After meeting with Salvati, Carolyn retained counsel in New Hampshire to represent her in the guardianship matter. Counsel determined that the ex parte guardianship order was without effect on jurisdictional and service grounds, and informed Carolyn that a motion to dismiss the guardianship action would be filed. Thereafter, the sisters settled into Ruth's home, doing activities together including shopping, going to luncheons, attending church, and socializing with friends.

In November 2011, Carolyn arranged to be seen by Dr. Michael Woulas, a clinical psychologist specializing in bipolar disorders and co-dependency. After meeting with Carolyn three times, Woulas determined that she possessed her own free will and was competent. He reported that "Carolyn showed no signs or symptoms of submission to Ruth, dominance by Ruth, discomfort or fear of Ruth," and that "Carolyn was safe engaging in a shared life with her sister."

In December, Ruth and Carolyn changed their estate plans so that they benefited one another in their reciprocal estate planning documents. Each sister met with Salvati alone to discuss her respective will. On December 21, Ruth and Carolyn executed new wills and intervivos trusts naming each other as sole beneficiaries. Each sister signed her new will with Salvati and his assistant as witnesses, with no one else in the room. Carolyn revoked her 2010 will and relinquished the original to Salvati. The 2011 will was executed in accordance with Florida law and was proven in common form. At around the same time, Carolyn swore out an affidavit for the New Hampshire guardianship matter, stating that she had "re-established and [had] a very good loving relationship" with Ruth. As the trial court found, "[a]t the point in time relevant to the execution of the 2011 will, there is no doubt that the evidence

4

shows the sisters . . . shared a very close and likely what can be considered a confidential relationship with one another."

The defendants do not contend that the trial court's findings are clearly erroneous or unsupported by the record. Rather, they simply recite contrary evidence that the trial court apparently either did not credit or did not find persuasive. "[T]he trier of fact is in the best position to measure the persuasiveness and credibility of evidence and is not compelled to believe even uncontroverted evidence." DeLucca v. DeLucca, 152 N.H. 100, 102 (2005) (quotation omitted). "Furthermore, it was within the discretion of the trial judge to resolve conflicts in the evidence. The trial court could accept or reject such portions of the evidence presented as he found proper." Id. (quotation omitted). Based upon our review of the record, we cannot conclude that no reasonable fact finder could have found that Ruth proved by clear and convincing evidence that the will was not the product of undue influence.

Finally, the defendants argue that the trial court erred by excluding certain affidavits and admitting Carolyn's affidavit. With regard to the excluded affidavits, the defendants concede that both affidavits contain hearsay, but argue that they should have been admitted nonetheless. As to Carolyn's affidavit, the defendants contend that it "is highly suspect in terms of its trustworthiness." We will not reverse a trial court's ruling on the admissibility of evidence absent an unsustainable exercise of discretion. MacDonald v. B.M.D. Golf Assocs., 148 N.H. 582, 584 (2002). To show an unsustainable exercise of discretion, the defendants must demonstrate that the trial court's ruling was clearly untenable or unreasonable to the prejudice of their case. Id. We conclude that the defendants have failed to do so.

Affirmed.

DALIANIS, C.J., and HICKS, LYNN, and HANTZ MARCONI, JJ., concurred.

**Eileen Fox,
Clerk**