**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2023-0254, <u>In the Matter of Charles Smith, Jr., and Shaun Smith</u>, the court on May 3, 2024, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal and has determined to resolve the case by way of this order. <u>See Sup. Ct. R.</u> 20(2). The respondent, Shaun Smith, appeals a final decree entered by the Circuit Court (<u>Countway</u>, J.) in her divorce from the petitioner, Charles Smith, Jr., and several orders resolving post-decree motions for reconsideration and clarification. On appeal, she argues that the trial court erred by allegedly not distributing the marital property in an equitable manner, by requiring that she refinance the marital home before certain other properties in the marital estate are sold, and by not awarding her alimony. We affirm.

The trial court has broad discretion in fashioning a final divorce decree. <u>In the Matter of Spenard & Spenard</u>, 167 N.H. 1, 3 (2014). Its discretion includes decisions concerning alimony and property distribution. <u>Id</u>. The trial court likewise has broad discretion to manage the proceedings before it, <u>In the Matter of Conner & Conner</u>, 156 N.H. 250, 252 (2007), including whether to allow evidence over an objection that the evidence was not properly disclosed in discovery, <u>see</u> <u>Murray v. Developmental Servs. of Servs. of Sullivan County</u>, 149 N.H. 264, 266-68 (2003). We will not overturn the trial court's rulings on such matters absent an unsustainable exercise of discretion, reviewing the record only to determine whether it contains an objective basis to sustain the court's discretionary judgments. <u>Spenard</u>, 167 N.H. at 3; <u>Murray</u>, 149 N.H. at 267; <u>State v. Lambert</u>, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard). If the trial court could reasonably have reached its findings on the evidence before it, they will stand. <u>Spenard</u>, 167 N.H. at 3. We defer to the trial court's judgment in resolving conflicts in testimony, evaluating witness credibility, and determining the weight of evidence, mindful that the trial court may accept or reject, in whole or in part, the testimony of any witness, and is not required to believe even uncontested testimony. <u>In the Matter of Aube & Aube</u>, 158 N.H. 459, 465-66 (2009).

We first address the respondent's arguments concerning property distribution. RSA 458:16-a, II (Supp. 2023) requires the trial court to divide marital property, including marital debt, <u>see</u> <u>Maldini v. Maldini</u>, 168 N.H. 191, 195 (2015) (stating that "marital property" includes "marital debt"), in a manner that is equitable, <u>see</u> <u>In the Matter of Sarvela & Sarvela</u>, 154 N.H. 426,

431 (2006). The trial court is required to presume that an equal division of marital property is equitable unless it determines, after considering one or more statutory factors, that an equal division would not be equitable or appropriate. RSA 458:16-a, II; Sarvela, 154 N.H. at 430-31. Such factors include the "duration of the marriage," the "age, health, social or economic status, occupation, vocational skills, employability, separate property, amount and sources of income, needs and liabilities of each party," the "opportunity of each party for future acquisition of capital assets and income," the "actions of either party during the marriage which contributed to the growth or diminution in value of property owned by either or both of the parties," and the "value of property that is allocated by a valid prenuptial contract made in good faith by the parties." RSA 458:16-a, II(a), (b), (c), (f), & (k). The trial court is not required to divide the property by some mechanical formula, but in a manner that it deems just based upon the evidence presented and the equities of the case. Sarvela, 154 N.H. at 431. Nor is the trial court required to consider all statutory factors in RSA 458:16-a, II, or to give such factors equal weight. Id.

The trial court found that the marriage in this case was long-term. At the time of the divorce, the respondent was employed as a flight attendant with a pension and a retirement account that the court valued at $118,020.82, and the petitioner was self-employed as a carpenter with an IRA that the court valued at $4,520.75. The trial court found that, while the divorce was pending, the respondent had withdrawn $70,000 from her retirement account, $27,405.56 of which the trial court determined should be credited back to the marital estate. The most recent financial affidavits filed by the parties at the time of the final hearing showed that the respondent had monthly income exceeding her expenses by approximately $1,000, and that the petitioner had monthly self-employment income approximately equaling his expenses.

The parties' primary marital asset was the marital home, which the trial court determined to be worth $455,000 at the time of the final hearing, and to be encumbered by a mortgage in the amount of $56,719.02. Prior to the marriage, the parties entered into a prenuptial agreement entitling the respondent to the first $50,000 of equity in the marital home. The parties agreed that the respondent should be awarded the marital home. Additionally, the parties owned two undeveloped parcels of land.

In dividing the marital property, the trial court awarded the first $50,000 of equity in the marital home to the respondent in accordance with the prenuptial agreement. The trial court otherwise awarded the marital home to the respondent and determined that the remaining equity in the marital home and the parties' retirement accounts should be equally divided between them. The trial court calculated the respondent's equalization payment to the petitioner to be $222,950.31 in a spreadsheet, which it incorporated in its narrative order. With respect to the undeveloped parcels, the trial court

ordered that they "shall be . . . sold and the proceeds shall be divided equally" between the parties. With respect to the respondent's payment of the $222,950.31, the trial court stated that "[t]his shall be achieved first through the proceeds . . . of the [sale of the] two lots. Thereafter, the remaining balance shall be paid through a refinance of the marital home which shall occur within 120 days of the Clerk's Notice of Decision on this Order."

The petitioner moved for reconsideration, observing that, in calculating the respondent's equalization payment of $222,950.31, the trial court had improperly added the total equity in the marital home to the total value of the retirement assets, divided that amount in half, and then subtracted the $50,000 of equity to which the respondent was entitled under the prenuptial agreement from half the value of the marital assets as a whole. The petitioner argued, correctly, that the trial court should have instead subtracted the $50,000 from the value of the marital home first, then added the value of the retirement assets to the remaining equity in the marital home, and finally divided the resulting figure in half. Properly calculated, the petitioner argued that the respondent's equalization payment was $247,950.30, or approximately $25,000 more than $222,950.31. The trial court granted the motion, agreeing that it had erred by not deducting the $50,000 first.

Additionally, the petitioner moved to clarify the trial court's language concerning how the respondent would make the equalization payment, noting that the respondent had taken the position that the trial court's statement that the equalization payment "shall be achieved first through the proceeds . . . of the [sale of the] two lots" meant that the petitioner was not entitled to any proceeds from the sale of the lots, but was only entitled to the equalization payment, satisfied first by the total sale proceeds, and then by refinancing the marital home. The trial court granted this motion as well, clarifying that it had intended that the petitioner receive all of the proceeds from the sale of the lots, and that half of those proceeds would constitute a dollar-for-dollar credit against the respondent's equalization payment obligation. The trial court additionally stated that the respondent "shall begin the refinance process forthwith if she has not already done so."

Thereafter, the respondent moved for reconsideration, seeking, among other relief, that the court stay her obligation to refinance the marital home until after the undeveloped lots were sold. At a subsequent hearing on the motion, held after the 120-day deadline to refinance the marital home had passed, the respondent represented that the parties had been unable to sell the lots, and that without selling the lots, she could not refinance the marital home. In ruling on the motion, the trial court observed that it had "believed (incorrectly) that the lots would sell quickly and that the Respondent would benefit from having to pull a lesser amount of equity out of the marital home to achieve the property equalization." Although the trial court granted the

3

petitioner the option to accept an award of the two lots for a value of $125,000 in lieu of an actual sale of the lots and division of proceeds, and to have the respondent's equalization payment obligation partially satisfied by that award, it otherwise ordered that she refinance the marital home and satisfy the equalization payment within 45 days.

The respondent again moved to reconsider, arguing that the final decree had contemplated a "two-step process" requiring the lots to be sold prior to the refinancing, and that the "option" should therefore be unconditional and mandatory. The petitioner otherwise declined to exercise the option. In denying the motion, the trial court observed: "The payout of $247,950.30 is not interconnected with the sale of the lots. The Court's equitable final order has not changed (other than correcting the math error identified by Petitioner[)]. The refinance/payout deadline remains as stated in the" earlier order on the respondent's first motion for reconsideration. This appeal followed.

On appeal, the respondent first suggests that the trial court erred by increasing her equalization payment on reconsideration from $222,950.31 to $247,950.30, claiming that the trial court's mathematical "'error' was made in the trial court's 'spreadsheet' only, not in the trial court's narrative orders." We disagree. The trial court incorporated the spreadsheet into its narrative order, effectively making it part of its order. Cf. In the Matter of Salesky & Salesky, 157 N.H. 698, 702 (2008) (stating that the interpretation of a trial court order is a question of law, which we review de novo). Moreover, both the narrative order and spreadsheet, together, clearly reflect the trial court's intent to equally divide the marital property remaining after awarding the respondent the first $50,000 of equity in the marital home, and that it engaged in a computational error in that process that would have resulted in a $25,000 windfall in the respondent's favor. Under these circumstances, the trial court was well within its discretion to correct its error on reconsideration.

The respondent next challenges the property award on the basis that the trial court should not have equally divided the marital property. She argues that the factors of RSA 458:16-a, II, properly applied, should have resulted in her receiving more than half the marital property remaining after awarding her the first $50,000 in the marital home's equity pursuant to the prenuptial agreement, and that the trial court should have valued the marital residence from the date of the petition rather than the date of the divorce. Additionally, the respondent contends that the trial court erred by finding that "[n]either party had significant credit card debt at the beginning or end of this litigation" in declining to apportion credit card debt between the parties as part of the final decree, and that the petitioner's carpentry business had no "'stand-alone' value apart from the [petitioner's] own labor." The latter finding, she asserts, was contrary to the credible evidence offered at trial and resulted from the petitioner's alleged failures to produce evidence regarding the value of his

4

business in discovery, and she suggests that the trial court erroneously allowed the petitioner to introduce evidence at trial concerning his finances that he had not disclosed in discovery.

Upon this record, we cannot conclude that the trial court unsustainably exercised its discretion by equally dividing the marital assets remaining after awarding the respondent the first $50,000 of equity in the marital home under RSA 458:16-a, or by valuing the marital residence as of the date of the divorce. Spenard, 167 N.H. at 3. As the trial court observed, the parties had a long-term marriage, both parties made contributions to the marital estate over the years, including contributions to the marital home, and the petitioner incurred housing expenses during the years prior to the final decree and after the petition was filed. These findings were reasonably based upon the evidence. Id. Although the respondent may have offered evidence that she contributed more to the marital estate than the petitioner contributed, and that the petitioner underreported his income, the trial court was not compelled to credit such evidence, or to grant it more weight than evidence offered by the petitioner in dividing the marital property. Aube, 158 N.H. at 465-66. Nor was the trial court compelled to find that the petitioner incurred significant credit card debt in a manner that would have required a different distribution of the marital estate. Id. To the extent the respondent contends that the trial court should not have considered evidence offered by the petitioner regarding his financial contributions because of discovery violations, she has not established that the trial court unsustainably exercised its discretion by allowing the petitioner to offer such testimony. See Murray, 149 N.H. at 267.

The respondent additionally argues that the trial court erred, in response to her motions for reconsideration, by requiring that she refinance the property before the sale of the undeveloped lots. The respondent contends that this amounted to an improper modification of a final property settlement. See Sommers v. Sommers, 143 N.H. 686, 689 (1999). We disagree.

The trial court's final narrative order expressly required the respondent to refinance the marital home, thereby implicitly requiring her to make the equalization payment to the petitioner, "within 120 days of the Clerk's Notice of Decision on this Order." Although the trial court also stated that the equalization payment would "be achieved first through the proceeds . . . of the [sale of the] two lots," it explained on reconsideration that it had mistakenly believed that the lots would sell quickly, and nothing in the final narrative order, expressly or implicitly, conditioned the respondent's obligation to timely refinance the marital home upon the sale of the undeveloped lots. Construing the final decree in this manner is consistent with "the desirability, where practicable, of granting each spouse complete and immediate control over his or her share of the marital estate in order to ease the transition of the parties after dissolution," and of interpreting property settlements "so as to avoid

5

future conflicts between [the] parties." In the Matter of Harvey & Harvey, 153 N.H. 425, 436 (2006), overruled on other grounds by In the Matter of Chamberlin & Chamberlin, 155 N.H. 13, 15-17 (2007).

Even if the narrative order had conditioned the refinancing on the sale of the lots, however, and even if the narrative order had gone to final judgment, we note that the timing of a property division in a divorce may be modified without a showing of fraud, undue influence, deceit, misrepresentation, or mutual mistake. See In the Matter of Letourneau & Letourneau, No. 2021-0602 (non-precedential order at 3), 2023 WL 2207419 (N.H. Feb. 24, 2023); Twardosky v. Twardosky, 113 N.H. 438, 439 (1973); 3 C. Douglas, New Hampshire Practice, Family Law § 13.84, at 13-118 (4th ed. 2014). Here, the purported modification would have affected the timing of the refinancing and equalization payment only, and not the parties' property interests.

The respondent additionally challenges the property division on the basis that the trial court did not specifically rule upon her requests for findings of fact and rulings of law. We conclude that the trial court's narrative order and orders on reconsideration provide a sufficient basis for appellate review of the respondent's claims, and we find no error in its decision not to rule on the respondent's requests for findings of fact and rulings of law. See Geiss v. Bourassa, 140 N.H. 629, 632-33 (1996).

Finally, we address the respondent's argument that the trial court erred by not awarding her alimony. The respondent contends that the trial court erred by not considering the earning capacities of the parties, and by not imputing income to the petitioner due to his alleged failure to produce evidence as to his finances. She further argues that the trial court's alleged error in denying her request for alimony was "exacerbated" by its orders correcting its calculation error regarding the equalization payment, clarifying that the petitioner was entitled to half the proceeds from the sale of the undeveloped lots, and not staying her obligation to refinance the marital home until after the lots sold. We disagree.

In denying the respondent's request for alimony, the trial court found that her financial affidavit demonstrated "that her income exceeds her expenses by more than $1,000 per month," and thus, that she had not established need for alimony in accordance with RSA 458:19-a, I(a) & (b) (Supp. 2023). The trial court correctly reasoned that, in the absence of a showing of need for alimony under RSA 458:19-a, I, the petitioner's earning capacity, and whether he was underreporting his income, were not relevant factors. Although the respondent claims that the trial court misapprehended her financial affidavit, and that it artificially inflated her income "due to holiday incentive pay and perfect attendance incentives," the trial court was well within its discretion to assign weight to the financial affidavit, and to rely upon it in determining that the respondent had failed to establish reasonable need for

6

alimony.  See Aube, 158 N.H. at 465-66.  Upon this record, we cannot conclude that the trial court unsustainably exercised its discretion by denying the respondent's request for alimony.  Spenard, 167 N.H. at 3.

Affirmed.

MacDonald, C.J., and Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Timothy A. Gudas,**<br>**Clerk**